Law Offices
# Eccleston and Wolf
Professional Corporation

BALTIMORE-WASHINGTON LAW CENTER
7240 PARKWAY DRIVE – 4th FLOOR
HANOVER, MARYLAND 21076

(410) 752-7474
FAX (410) 752-0611
VIOLA@EWMD.COM

GREGG E. VIOLA

SUITE 260
1629 K STREET, N. W.
WASHINGTON, D. C. 20006
(202) 857-1696

SUITE 107
10400 EATON PLACE
FAIRFAX, VIRGINIA  22030
(703) 218-5330

April 20, 2021

**VIA ECF**

The Honorable Deborah L. Boardman
U.S. District Court for the District of Maryland
101 W. Lombard St., Baltimore, MD 21201

        RE:   *Buettner-Hartsoe v. CPS, et al.*
               Case 1:20-cv-03132-GLR

Dear Judge Boardman:

Pursuant to your Letter Order ECF 37, this letter provides you with an update regarding the discovery disputes raised by Defendant. Defendant and Plaintiffs conferred via telephone for approximately 45 minutes on April 15, 2021 beginning at 10:00 A.M. As set forth below, the parties were able to resolve some disputes, but some remain open and Defendant respectfully requests that the remaining issues be resolved during the April 23, 2021 telephone hearing.

**Matters That Were Resolved**

Defendant had raised objections to Plaintiff N.H.'s Answer to Interrogatory No. 17, in which Plaintiff was requested to itemize her economic damages because Plaintiff alleges medical expenses, lost wages, and impairment of future earnings in her Complaint. Plaintiff has agreed to withdraw Plaintiff N.H.'s claim for lost wages. With regard to medical expenses, Plaintiff has agreed to produce to counsel a list of documentation of medical expenses that Plaintiff has requested, a list of documentation of expenses that has been produced, and a list of documentation that remains outstanding and will be followed up on and produced. Because of the parties' efforts and Plaintiff's promises, Defendant's objection to Answer to Interrogatory No. 17 has been resolved.

**Matters That Were Not Resolved and Need the Court's Assistance**

    **Text Messages and Communications**

Defendant objects to Plaintiff N.H.'s Response to Document Request No. 15, in which Plaintiff was requested to produce texts, tweets, messages, and communications with individuals mentioned in the Complaint, i.e., seeking communications between N.H. and the individuals that she alleges sexually harassed and/or assaulted her. In response, Plaintiff N.H. produced a few social media messages and no text messages. Plaintiff incorporated the same response to Document Request No. 19 which is also at issue. Plaintiff agrees that the information is discoverable and, if available,

must be produced.  Plaintiff's position is that her devices have been searched and that the other text messages have been lost, deleted, or are otherwise unavailable.

It is particularly noteworthy that Plaintiff has failed to produce any text messages because her Complaint specifically alleges that "[she] was forced to change her phone number to evade constant harassment via social media and text messages."  *See* ECF 1 at ¶63.  Because text messages to Plaintiff previously existed, but Plaintiff claims that they have been lost, deleted, or are otherwise unavailable, Defendant requested that Plaintiff agree to allow an ESI contractor, Trustpoint, to have access to Plaintiff's phone(s) and computer(s) to image the devices and perform forensic testing to see if any lost, deleted, or otherwise unavailable messages and communications can be recovered.  Plaintiff has refused to agree.  Plaintiff does not dispute that Defendant is entitled to discovery of messages and communications between N.H. and the individuals that she alleges sexually harassed and/or assaulted her.  Plaintiff's objection is that having an ESI contractor conduct a search of Plaintiff's phone is overly invasive and a fishing expedition.

Plaintiff's objection is misguided.  First, as noted above, Plaintiff does not dispute that Defendant is entitled to discovery of the information that Defendant is seeking; instead, the manner in which the discovery is obtained is the only issue.  Under Plaintiff's theory, she is the gate-keeper of discovery and need only state that the messages and communications have been lost, deleted, or are otherwise unavailable to prevent Defendant from seeking them in another manner.  Plaintiff, however, is not the gate-keeper of discovery, and this is especially important when, according to Plaintiff, there were text messages that exist that might be able to be recovered.  Thus, by Plaintiff's own admission this is not a fishing expedition but an attempt to locate information that is not only discoverable but central to the case.

Moreover, Defendant's request is not onerous and invasive to Plaintiff.  This forensic ESI testing will be done 1) at Defendant's expense, and 2) with limited interruption to Plaintiff.  Defendant's ESI contractor has advised that Plaintiff's phone(s) and computer(s) used to send messages can be searched, and such responsive information can potentially be recovered, most likely remotely in a matter of hours.  Therefore, we do not anticipate that Plaintiff will have to relinquish her devices for days.

Because there is no issue as to discoverability, and the forensic ESI testing presents little burden to Plaintiff, this Court should order that Plaintiff allow Defendant's ESI contractor Trustpoint to have access her phone(s) and computer(s) to image and search the devices for communications that Plaintiff claims have been lost, deleted, and which are otherwise unavailable.  The search will be conducted using a list of 118 specific words, names, or phrases.  *See* Exhibit 1.  Defendant provided Plaintiff with a copy of the proposed search list, and Plaintiff refused to negotiate or provide any proposal to pare down the list (even though the list is nearly half of what Plaintiff's search term list was for Defendant's production of documents).[1]  Defendant will of course produce

---

[1] In *Gomez v. CPS,* Case No. 1:20-CV-03267, the plaintiff obtained emails that Defendant CPS had not produced because they were not within Defendant's search terms used to collect emails for production.  In response, the plaintiff filed a Motion to Compel seeking an Order that Defendant CPS engage an ESI contractor to conduct email searches using specific search terms.  In response to the Motion, Defendant agreed to hire an ESI contractor, Trustpoint, to search its servers for all emails containing a list of specific search terms.  The search terms were negotiated between

to Plaintiff a copy of the information it obtains from Plaintiff's devices, and will mark the information as confidential pursuant to a Stipulated Protective Order Regarding Confidentiality of Discovery Material to protect Plaintiff's confidentiality interests.

In the alternative, Defendant requests that Plaintiff conduct a search of its phone(s) and computer(s) for a list of search terms proposed by Defendant. This is similar to what the parties have done with regard to Defendant's document production. If Your Honor is not inclined to provide Defendant's ESI contractor with access to image and search Plaintiff's devices, Plaintiff should be required to search her devices for the proposed search terms and represent to the Court that she has done so. However, frankly, this process would be easier conducted by an ESI contractor, and given the limited interruption discussed above, that is the more reasonable and appropriate method to resolve this discovery dispute to search for documents that everyone agrees are discoverable.

### Social Media

Defendant objects to Plaintiff N.H.'s Response to Document Request No. 20, in which Plaintiff was requested to produce social networking site posts, messages, and profiles.

To pursue discovery regarding her claim for emotional distress, Defendant is entitled to pursue information about Plaintiff's personal life, who her friends are, whether her activities have changed since the occurrence, and whether her communications with her friends, the subject matter, and the frequency thereof, have changed since the occurrence. Defendant is entitled to pursue discovery of social media information to investigate whether the claims made in the lawsuit about the impact the occurrence has had on her are accurate. The prevailing view is that defendants are entitled to discovery of social networking data in civil lawsuits in which plaintiffs claim physical and emotional injuries. *See, e.g., Simply Storage Mgmt., LLC*, 270 F.R.D. 430 (S.D. Ind. 2010) (allowing discovery of Facebook material including status updates, communications between plaintiffs alleging emotional distress, and photographs and videos); *Romano v. Steelcase, Inc.*, 907 N.Y.S.2d 650 (Sup. Ct. Suffolk 2011) (holding plaintiff's right to privacy outweighed by defendant's need for information); *Mailhoit v. Home Depo U.S.A., Inc.*, 285 F.R.D. (C.D. Cal. 2012 (holding that social networking site content may be subject to discovery and the content is neither privileged or protected by any right of privacy as long as the request for discovery is tailored to appear reasonably calculated to lead to the discovery of admissible evidence); *Fawcett v. Altieri*, 960 N.Y.S. 2d 592, 597 (2012) ("Information posted in open social media accounts are freely discoverable and do not require court orders to disclose them.").

Plaintiff's position is that while Defendant is entitled to discovery of social media, all her social media information has been produced. Plaintiff have repeatedly told Defendant that "Plaintiff had provided all the information they had" and have taken the position that "Plaintiff's response is never good enough" to Defendant. *See* ECF 36. To the contrary, Defendant has information to believe that Plaintiff has additional social media that has not been produced.

---

the plaintiff and Defendant, and in the end, reflected 214 separate searches (when searches using the conjunction "OR" were separated into separate searches). *See* Exhibit 2. The search resulted in the collection of approximately 100,000 documents.

Eccleston and Wolf PC

*Snapchat*

Plaintiff produced a single screenshot of a Snapchat message from a user mentioning an assault and going to the police. *See* Exhibit 3. At the bottom of the screenshot, there is a message bubble reflecting a message that has not been produced. Therefore, Plaintiff clearly has not produced all of her Snapchat messages.[2]

*Facebook*

On April 5, 2021, Plaintiff represented to the Court that "Plaintiff has turned over her Facebook account's data." *See* ECF 31. Plaintiff has not done so. Plaintiff has produced a handful of Facebook messages, but not the download of her account data which would include all posts, photographs, messages, etc.

*Instagram*

Plaintiff also represented to the Court that "Plaintiff has turned over . . . screenshots from her active Instagram account." *See* ECF 31. Defendant knows that Plaintiff's production is incomplete, and was not produced in accordance with Federal Rule of Civil Procedure 34, for the following reasons:

First, Plaintiff produced ten pages of Instagram messages with a user that were bates-labeled 134, 137, 139, 142, 144, 146, 148, 156, 158, and 160. *See* Exhibit 4. Because the bates-labels are in non-sequential order, and were interspersed with other documents, they were not produced as ordinarily maintained or in a reasonably usable form.

Second, Plaintiff produced seven pages of Instagram messages with a user that were bates-labeled 140, 149, 151, 153, 163, and 165. *See* Exhibit 5. Because the bates-labels are in non-sequential order, and were interspersed with other documents, they were not produced as ordinarily maintained or in a reasonably usable form. Additionally, page 140 contains a message that is incomplete.

Third, Plaintiff produced a single screenshot from an Instagram account belonging to Plaintiff. *See* Exhibit 6. The Instagram account still exists, and is private. The screenshot attached as Exhibit 7 was collected by Defendant on March 25, 2021, reflecting that the Plaintiff's account had 338 posts. More recently, the screenshot attached as Exhibit 8 was collected by Defendant on April 16, 2021, reflecting that the Plaintiff's account had 348 posts. Therefore, although Plaintiff only produced a screenshot of one post, Plaintiff's account now has 348 posts. In other words, Plaintiff has not produced all of the Instagram account, although she has conceded that the documents are discoverable.

---

[2] Moreover, the screenshot was taken on September 10, 2020, meaning that it was in Plaintiff's possession less than 60 days before her Complaint was filed, and is likely still on Plaintiff's phone. We know that the screenshot was taken on September 10, 2020 because the screenshot reflects a date of Thursday September 10, and prior to 2020, the last time that September 10 fell on a Thursday was 2015, long before any of the allegations giving rise to this case.

Eccleston and Wolf PC

Based upon the foregoing, it is clear that Plaintiff has not produced all of her social networking site posts, messages, and profiles. Because Plaintiff acknowledges that the documents are discoverable, this Court should order that Plaintiff download and produce all of her social networking accounts within the next ten days and in advance of Plaintiff's deposition scheduled for May 3, 2021. Plaintiff should be ordered to download her account information based upon the instructions provided by the social networking applications and as set forth at the links below:

    Instagram – https://www.facebook.com/help/instagram/181231772500920

    Snapchat – https://support.snapchat.com/en-US/a/download-my-data

    Facebook – https://www.facebook.com/help/212802592074644

                            Sincerely,

                            ECCLESTON AND WOLF, P. C.

                            By:    /s/Gregg E. Viola
                                  Gregg E. Viola

GEV/MPJ:sdm/jc