

336 S. Main Street, Suite 2A-C  Bel Air, MD 21014
Toll Free: (855) KBA-LAWS (522-5297)
Office: (410) 885-6267
Fax: (855) 334-5626
www.KBAattorneys.com

**Brian Ketterer** (PA) • **Justin Browne** (MD)
**Michael Appel** (MA, NH) • **Derek Braslow** (PA, NJ, DC) • **Julie Ferraro** (MA, FL)
**Christina Graziano** (MA) • **Reza Davani** (MD)

June 1, 2021

**VIA CM/ECF SYSTEM**
The Honorable Richard D. Bennett
United States District Court, District of Maryland

      **RE:** *Buettner-Hartsoe et al v. Baltimore Lutheran High School Association, et al.*
             Case No.: 1:20-cv-03132-RDB

Dear Judge Bennett:

Pursuant to Rule 16(b)(3)(B)(v) and in compliance with Judge Bennett's December 8, 2020 Informal Discovery Letter entered in the related *Gomez* and *Conrad* cases, Plaintiffs' counsel seeks this Court's involvement to address four discovery issues in the pending cases against Baltimore Lutheran High School, d/b/a Concordia Preparatory School ("CPS") that have been consolidated before Judge Bennett (together, the "CPS sexual assault cases").[1] First, Plaintiffs seek an order compelling Defendant to produce documents concerning Plaintiffs and witnesses whose depositions have been scheduled before the depositions. Second, Plaintiffs object to Defense counsel's practice of noticing multiple fact witness depositions on the same day, effectively preventing Plaintiffs from having an opportunity to substantively cross-examine these witnesses. The parties have met and conferred on the first two issues on a litany of occasions, via phone calls and emails. Third, Plaintiffs seek a protective order preventing defense counsel from interrupting deponents' answers and refusing to let them answer questions. Finally, Plaintiffs' counsel wishes to raise a potential Fifth Amendment issue before this Court in advance of fact witness depositions that have just recently been noticed and scheduled by Defense counsel.

These matters concerning the conduct at depositions and the Fifth Amendment rights of the witnesses are of such a serious and time-sensitive nature that the typical meet and confer process must be circumscribed in the interest of expedience, as there are additional depositions scheduled before the close of discovery.

---

[1] The four cases other assigned to Judge Bennett are *Pullen v. Baltimore Lutheran High School Association,* 1:20-cv-03132-RDB, *Gomez v. Baltimore Lutheran High School Association*, et al., 1:20-cv-03267-RDB, *Conrad, et al. v. Baltimore Lutheran High School Association, et al.,* 1:20-cv-03229-RDB, and *Barber, et al. v. Baltimore Lutheran High School Association,* 1:21-cv-00691-RDB.



I. **Overdue Discovery and Unilateral Scheduling of Multiple Depositions in One Day**

    A. **CPS Must Produce Overdue Discovery Before Additional Depositions Occur.**

CPS agreed to run searches using search terms agreed upon by the parties back in February. Since that time, Plaintiffs' counsel has followed up on these searches, narrowed items in dispute, and proposed ways for CPS's counsel to avoid fruitless searches and irrelevant results. However, CPS has not produced a single document related to these searches. Plaintiffs' counsel have repeatedly asked if defense counsel have been reviewing documents that we have not seen, which would be improper. Defense counsel has repeatedly ignored the question. So CPS appears to be getting an unfair advantage and by dragging out their production of responsive documents, are impeding plaintiff counsel's ability to follow up with additional discovery requests germane to any new documents before the close of fact discovery. Accordingly, CPS should not be allowed to depose anyone further unless and until CPS produces the long past-due documents. The next deposition is set for June 9th. We therefore request documents by June 3 to prepare accordingly.

    B. **CPS Cannot Unilaterally Schedule Multiple Depositions in One Day without Plaintiffs' Agreement.**

Despite having actual knowledge for months, and in some cases since the day the complaints were filed, of the identities of the fact witnesses it now seeks to depose, CPS has waited until the eleventh hour to scramble to schedule depositions of fact witnesses that include the perpetrators of Plaintiffs' sexual assaults and their parents. Defense counsel has known the identities of these individuals for months, and in some cases their identities were known to CPS before they were known to Plaintiffs, yet Defense counsel made no attempt to secure dates from counsel or notice these depositions before the tail end of the fact discovery period. In an attempt to circumvent the rapidly approaching discovery deadline of June 25, 2021, Defendant has been scheduling depositions such that two or three depositions are to take place in a given day. This effectively prohibits Plaintiffs' counsel from conducting a substantive cross-examination of these witnesses. Plaintiffs have informed Defense counsel of their objection to this practice, and that Plaintiffs' counsel does not agree to truncated or artificially shortened depositions, but we have not received a response from Defense counsel. As such, we require the Court's intervention to ensure that all parties are given adequate time to conduct their direct and cross examinations of witnesses in these cases.

II. **Improper Conduct During Depositions**

To date, plaintiffs in three of the CPS sexual assault cases have been deposed by counsel for CPS and counsel for the Lutheran Church-Missouri Synod. Ms. Hartsoe, the 18-year-old plaintiff in the *Buettner-Hartsoe* matter, was deposed for approximately seven hours on May 27, 2021. During this deposition, counsel for CPS repeatedly interrupted the witness, attempted to prevent her from giving full answers to questions, prevented counsel from stating objections concerning the interrupted testimony, and asked categories of questions seeking information beyond the scope of Rule 26 that clearly constitute intimidation, harassment, annoyance, embarrassment,



and oppression. Fed. R. Civ. Pro. Rule 26(c)(1). Plaintiffs fully recognize that by bringing suit they have exposed themselves to uncomfortable and probing questions and difficult topics, but these questions go far beyond the bounds of decency and appropriateness under the Rules.

### A. Plaintiffs seek an order prohibiting harassing categories of irrelevant questions.

Plaintiffs' counsel, and the plaintiffs themselves, fully understands the scope of topics that can be explored during a deposition. However, Rule 26 of the Federal Rules of Civil Procedure contemplates situations like this one in which a topic of questioning is not relevant or admissible at trial and is not proportional to the needs of the case. FRCP 26(b)(1). Here, the plaintiffs' sex lives are not relevant to the question of whether or not CPS owed them a duty to prevent and protect against sexual assault amongst its students. Discovery as to how many people each plaintiff has slept with does not make it more or less likely that CPS failed to take reasonable steps to protect each plaintiff. This type of discovery is not even allowed in criminal cases where the perpetrators of the assaults are parties to the case and where the stakes are much higher. Focusing on these topics is an attempt to distract from the school's duties and liability and shame the plaintiffs into silence and submission.

Defense counsel's recent depositions of two plaintiffs shed light on the problematic scope of CPS's questioning of witnesses. Defense counsel asked Ms. Hartsoe a number of questions about her sexual habits, including how many people she'd slept with and engaged in oral sex with, and questioned how she could possibly be upset that a pornographic video of plaintiff, taken without her consent while she was a minor, was spread around her school.[2] Plaintiff's sex life is not at issue in this case. Discovery as to Plaintiff's participation in consensual sexual activity before or after the assaults complained of in her lawsuit does not prove or disprove any allegation or defense raised in this case concerning CPS's duties and breaches thereof with respect to Plaintiff's safety.

Similarly, in the 15-year-old plaintiff's deposition in the *Conrad* case, Defense counsel asked the plaintiff a litany of questions probing the veracity of the plaintiff's account of her assault, which has already been adjudicated and a sentencing has been reached. Defense counsel is fully aware that the perpetrator in the *Conrad* matter pled guilty to multiple charges relating to this sexual assault and admitted to the facts alleged by this plaintiff in her civil suit. (See Ex. 1, transcript of sentencing,) Nonetheless, Defense counsel asked over one hundred questions in plaintiff's deposition about the assault itself, including asking the plaintiff what kind of car her rapist drove, whether the seats were bucket seats, if he was left or right handed, what hand he used to digitally rape her, what she was wearing when she was raped, if she kissed her rapist back after he began assaulting her, how long the assault lasted, and perhaps most galling, whether the plaintiff ever told her rapist "no" during the course of the assault (See Ex. 2, Transcript of Deposition of H.C. 88:8-9; 89:20;  90:5-7; 90:18; 90: 21-25; 92:23-25; 95:1-3; 97:6-8.) Defense counsel's questions as to whether and how H.C.'s rape occurred – coupled with his repeated insinuation that this young woman fabricated the assault so that her mother would be more lenient in punishing her for unrelated transgressions – did not yield any testimony or evidence that is relevant to the civil

---

[2] Plaintiffs' counsel requested a rush copy of the rough transcript of the deposition of Ms. Hartsoe and will supply the Court with a copy of this transcript upon receipt.



case concerning the school's liability for its actions and inactions with respect to this plaintiff. These questions did nothing more than harass, embarrass, and intimidate the plaintiff. (See Ex. 2, Deposition Transcript at 111:6-11).

### B. Plaintiffs seek an order prohibiting Defense counsel from cutting off deponent's testimony.

Another example of inappropriate conduct during Ms. Hartsoe's deposition concerns CPS's counsel's refusal to allow the plaintiff to provide fulsome answers to some of her questions, and Defense counsel's refusal to allow Plaintiff's counsel to state her objections on the record without interruption. As the rough transcript and recording of the deposition will show, Defense counsel cut the witness off from answering a number of times, often in the middle of her sentences. Plaintiff's counsel repeatedly asked Defense counsel to allow the witness to finish her answers. In fact, in one instance, Defense counsel erupted at Plaintiff's counsel, would not allow her to give a full objection to the truncated answer on the record, and attempted to prevent the witness from finishing her answer by talking over her and starting a new question in the midst of her attempts to finish the testimony that was previously interrupted. Further, Defense counsel interjected snide remarks towards the plaintiff throughout her deposition, including "it's not like it's a complicated question", "so losing weight was a good thing", "you seem to have a lot of opinions", "we know you're not a doctor, you haven't even graduated high school yet". The plaintiff is 18 years old and was offering testimony about a sensitive topic. The plaintiff's deposition is not an opportunity for Defense counsel to offer his thoughts and opinions, much less his sarcasm.

Allowing a witness to finish her answers is a foundational requirement of any deposition. Attempts to cut off, interrupt, and otherwise frustrate a witness's attempts to give full answers in a deposition are improper and must be prevented for the duration of discovery in this case. Additionally, interrupting counsel and preventing a fellow attorney from stating objections on the record is similarly inapposite to the rules of this Court and must not be allowed to continue. As such, Plaintiffs' counsel seeks the entry of a protective order that will protect witnesses from unduly harassing questions and will prevent Defense counsel from any further attempts to impede the witnesses from giving testimony.

### III. Fifth Amendment Concerns

Defense counsel's conduct with respect to interrupting the witness and preventing Plaintiffs' counsel from stating her objections is additionally concerning given that CPS has issued deposition subpoenas for a number of fact witnesses who are either involved in ongoing criminal investigations relating to the allegations in Plaintiffs' complaints, or could potentially offer self-incriminating testimony in their depositions that may subject these witnesses to police investigation. For example, CPS has subpoenaed the perpetrator in the *Conrad* matter, who admitted to sexually assaulting the plaintiff as part of a criminal plea in Baltimore Circuit Court. (See Ex. 1, Transcript of Sentencing Hearing of David Kirtz.) If called to testify in a deposition in the *Conrad* case, the perpetrator could potentially further incriminate or perjure himself depending on the testimony given. Similarly, CPS has subpoenaed the perpetrators in the *Buettner-Hartsoe* matter, despite the fact that the Baltimore County, Baltimore City, and Harford



County police departments are currently investigating these men in connection with the allegations made in the civil suits. Given that the deposition questioning will certainly cover the alleged sexual assaults that these men partook in, Plaintiffs' counsel feels that it is incumbent on this Court to issue these witnesses (some of whom will not be represented by counsel) guidance on their Fifth Amendment rights and the waiver of those rights should these men give testimony. As such, Plaintiffs' counsel seeks the entry of a protective order governing this issue as well as your Honor's involvement in advising these witnesses of their rights, as it would be improper for counsel for any of the parties to offer legal advice to an unrepresented witness.

Plaintiffs' counsel requests a conference on these issues at any time convenient for the Court.

Respectfully,

/s/ Christina Graziano
Christina Graziano (admitted *pro hac vice*)
Justin A. Browne (Bar No. 29164)
Brian Ketterer (admitted *pro hac vice*)
**KETTERER, BROWNE & ASSOCIATES, LLC**