UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Baltimore Division

|  |  |
|---|---|
| **DONNA BUETTNER-HARTSOE, et al.**<br><br>       Plaintiffs<br><br>**v.**<br><br>**BALTIMORE LUTHERAN HIGH SCHOOL ASSOCIATION d/b/a CONCORDIA PREPARATORY SCHOOL, et al.**<br><br>       Defendants | **Case No.: 1:20-cv-03132-RDB** |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR RECONSIDERATION, OR IN THE ALTERNATIVE, MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL

Defendant Baltimore Lutheran High School Association d/b/a Concordia Preparatory School ("CPS"), by and through undersigned counsel, hereby moves this Honorable Court to reconsider the Court's Order of July 21, 2022, ECF No. 131 (the "Order"), and the accompanying Memorandum Opinion, ECF No. 130 (the "Memorandum Opinion"), or in the alternative, to amend the Order to certify for interlocutory appeal the question of law whether tax exemption under 26 U.S.C. § 501(c)(3) constitutes receipt of federal financial assistance for purposes of Title IX of the Education Amendments Act of 1972.

### TABLE OF CONTENTS

Background ............................................................................................................2

Argument ..............................................................................................................3

   I.   Motion for Reconsideration ................................................................3

   II.  Motion for Certification of an Interlocutory Appeal ............................17

A.    The Order Involves a Controlling Question of Law
      Regarding Whether Title IX Applies to § 501(c)(3) Entities ...................19

B.    There Is a Substantial Ground for Difference of Opinion..........................24

C.    An Immediate Appeal of the Order Would Materially
      Advance the Ultimate Termination of This Litigation
      (and the Four Other Cases Against CPS).................................................25

III.   Conclusion ........................................................................................................28

## BACKGROUND

The facts underlying the instant Motion are undisputed.  Count I of Plaintiffs' Complaint alleges violation of Title IX, and to support that claim, Plaintiffs alleged in conclusory fashion that "During the relevant timeframe, Defendant CPS was a recipient of federal education funding within the meaning of Title IX."  ECF No. 69 at ¶ 86. However, like many of the allegations in the Complaint, discovery has not supported what Plaintiffs claim.[1]  Discovery revealed that during the time periods in which the Plaintiff student was enrolled at CPS, CPS did not receive any direct federal education funding, but that CPS was tax-exempt as a § 501(c)(3) entity.  On the basis of that tax exemption, the Court denied CPS' Partial Motion to Dismiss or in the Alternative for Summary Judgment on the Title IX claim, stating "this Court holds that § 501(c)(3) tax exemption constitutes federal financial assistance for the purposes of Title IX." ECF No. 130 at 12; ECF No. 131.

CPS requests the Court reconsider the Order on the basis of clear error because the Court's decision incorrectly concluded that a tax exemption, authorized and extended under a law administered by the Internal Revenue Service, constitutes federal financial assistance for purposes of Title IX.  The Court incorrectly analogized the definition of federal financial assistance with

---

[1] It is beyond the scope of this Motion to set forth each and every allegation in the Complaint of which there is no evidence or testimony in the record to support.  This will be addressed in Defendant's Motion for Summary Judgment.

general antidiscrimination public policy and the Internal Revenue Service's ability to revoke tax-exempt status to racially discriminatory schools that accordingly do not serve a charitable purpose.

In the alternative, pursuant to 28 U.S.C. § 1292(b), CPS seeks certification for an interlocutory appeal of the discrete legal issue whether tax exemption under § 501(c)(3) constitutes receipt of federal financial assistance for purposes of Title IX because the issue is a controlling question of law that will affect this case and other cases, not to mention the profound effect it will have on independent private schools and other § 501(c)(3) entities throughout the Fourth Circuit that will have to modify policies and procedures to comply with Title IX or give up tax-exempt status.  Additionally, there is substantial grounds for difference of opinion given the split of authority in other circuits on this issue. Finally, the resolution of that question would materially advance the ultimate resolution of this litigation.

**ARGUMENT**

## I.   MOTION FOR RECONSIDERATION

In *Cincinnati Ins. Co. v. Fish*, Civil Action No. RDB-19-3355, 2022 U.S. Dist. LEXIS 75666, at *2-3 (D. Md. Apr. 26, 2022), the Court recently expressed the standard of review applicable to a Motion for Reconsideration of an order that does not constitute a final judgment:

> Federal Rule of Civil Procedure 54(b) governs reconsideration of orders that do not constitute final judgments in a case. Rule 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). The United States Court of Appeals for the Fourth Circuit has not enunciated the precise standard that should govern a motion for reconsideration of an interlocutory order under Rule 54(b). *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1472 (4th Cir. 1991). In *Fayettville*, the Fourth Circuit declined to "thoroughly express [its] views on the interplay of Rules 60, 59 and 54," but suggested that at least parts of the Rule 60(b) standard may be referenced by a district court in determining whether it should reconsider an interlocutory order. *Id.* at 1470. Thus, the court's analysis is guided by Rule 60(b) but is not bound by its strictures. *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d

3

505, 514 (4th Cir. 2003) ("Motions for reconsideration of interlocutory orders are not subject to the strict standards applicable to motions for reconsideration of a final judgment.").

Under Rule 60(b), this Court has discretion to relieve plaintiff from a final order when any of the following can be shown: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief. Fed. R. Civ. P. 60(b). Motions for reconsideration are "an extraordinary remedy which should be used sparingly." *Pacific Ins. Co. v. Am. Nat. Fire Ins. Co*., 148 F.3d 396, 403 (4th Cir. 1998).

The Court continued by quoting from *Chae Bros., LLC v. Mayor & City Council of Balt*., Civil Action No. GLR-17-1657, 2019 U.S. Dist. LEXIS 34587, at *8 (D. Md. Mar. 5, 2019), and stated:

"mere disagreement" with a court's ruling is not enough to justify granting a motion for reconsideration. *Lynn v. Monarch Recovery Mgmt.*, 953 F. Supp. 2d 612, 620 (D. Md. 2013) (quoting *Sanders v. Prince George's Pub. Sch. Sys.*, No. RWT 08cv501, 2011 U.S. Dist. LEXIS 107584, 2011 WL 4443441, at *1 (D. Md. Sept. 21, 2011)). Rather, to justify granting a motion for reconsideration on the basis of clear error, "the prior judgment cannot be 'just maybe or probably wrong; it must . . . strike the court as wrong with the force of a five-week-old, unrefrigerated dead fish.'" *Fontell v. Hassett*, 891 F.Supp.2d 739, 741 (D. Md. 2012) (alteration in original) (quoting *TFWS, Inc. v. Franchot*, 572 F.3d 186, 194 (4th Cir. 2009)). In other words, the Court's previous judgment must be "dead wrong." *Franchot*, 572 F.3d at 194 (quoting *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988)).

Fish, 2022 U.S. Dist. LEXIS 75666, at *4.

This case, and the legal issue decided in the Court's Order, is ripe for application of the extraordinary remedy of reconsideration because the Court's decision is dead wrong because CPS' tax-exempt status does not constitute federal financial assistance authorized or extended under a law administered by the Department of Education.  The Court's decision was based on CPS' status as a § 501(c)(3) tax-exempt entity as the Court concluded that "[e]nforcing the mandates of Title

IX in schools with § 501(c)(3) status aligns with and protects the principal objectives of Title IX: 'to avoid the use of federal resources to support discriminatory practices' and 'to provide individual citizens effective protection against those practices.'" ECF No. 130 at 12.   That conclusion, however, over simplifies the legal issue by conflating overarching government policy with the application of a discrete legal issue and interpretation of a Department of Education regulation.

No party can dispute that it is in the best interests of the public to prevent discrimination based upon race, color, national origin, sex, gender, age, disability, sexual orientation, etc., and the Federal government has enacted laws protecting individuals from such discriminatory practices. *See, e.g.,* Title VII of the Civil Rights Act of 1964; Age Discrimination in Employment Act of 1967; The Americans With Disabilities Act of 1990; Equal Pay Act of 1963; The Civil Rights Act of 1991; Title IX of the Education Amendments of 1972.  That government interest, however, does not mean that all persons and entities are obligated and bound by the requirements and regulations of those Federal laws.  To that end, particular to this case Title IX only applies to an educational institution that receives "Federal financial assistance."   *Doe v. Fairfax Cty. Sch. Bd.*, 1 F.4th 257, 263-64 (4th Cir. 2021); 34 C.F.R. § 106.2(i).  That is, regardless of public policy, there must an element of federal financial assistance before an entity is bound by the requirements and regulations of Title IX.

Moreover, it is clear that not all government assistance or benefits constitute federal financial assistance for purposes of application of Title IX.  The Department of Education has enacted detailed and comprehensive regulations implementing Title IX including defining "Federal financial assistance" with a comprehensive list of government assistance "authorized or extended under a law administered by the Department [of Education]":

(b) Department means the Department of Education.

\* \* \*

(g) Federal financial assistance means any of the following, when authorized or extended under a law administered by the Department:
(1) A grant or loan of Federal financial assistance, including funds made available for:

> (i) The acquisition, construction, renovation, restoration, or repair of a building or facility or any portion thereof; and
> (ii) Scholarships, loans, grants, wages or other funds extended to any entity for payment to or on behalf of students admitted to that entity, or extended directly to such students for payment to that entity.

(2) A grant of Federal real or personal property or any interest therein, including surplus property, and the proceeds of the sale or transfer of such property, if the Federal share of the fair market value of the property is not, upon such sale or transfer, properly accounted for to the Federal Government.
(3) Provision of the services of Federal personnel.
(4) Sale or lease of Federal property or any interest therein at nominal consideration, or at consideration reduced for the purpose of assisting the recipient or in recognition of public interest to be served thereby, or permission to use Federal property or any interest therein without consideration.
(5) Any other contract, agreement, or arrangement which has as one of its purposes the provision of assistance to any education program or activity, except a contract of insurance or guaranty.

34 C.F.R. § 106.2(g).

Thus, only five types of government assistance qualify as federal financial assistance for purpose of application of Title IX, and that the assistance must be authorized or extended under a law administered by the Department of Education. The Court's Order was blatantly wrong because a tax exemption provided by the Internal Revenue Services (IRS) pursuant to 26 U.S.C. § 501(c)(3) does not fulfill either of those requirements.  First, a tax exemption provided by the IRS is not listed in the comprehensive regulatory definition of federal financial assistance.  The regulation defines federal financial assistance as "any of the following" and does not mention any tax benefits whatsoever.  The absence of tax benefits or tax exemption from the list of federal financial

assistance is conspicuous, reflecting a clear intent that tax exemptions do not constitute federal financial assistance.

Second, a § 501(c)(3) tax exemption is not a government benefit authorized or extended under a law administered by the Department of Education; it is authorized or extended under a law administered by the IRS.  *See Bob Jones Univ. v. United States*, 461 U.S. 574, 596-99 (1983) (describing history of Congress delegating to the IRS the authority to administer and interpret the tax laws of the United States); *Regan v. Taxation with Representation*, 461 U.S. 540, 544 (1983) (cited on Page 10 of ECF No. 130 including for the proposition that "tax exemptions and tax-deductibility are a form of subsidy that is administered through the tax system," i.e., not through the Department of Education).

The types of government assistance detailed in the Title IX regulation involve the transfer of funds or something of value, i.e., a cash grant or loan, a grant of property, receipt of federal services, etc.  *See Bachman v. Am. Soc'y of Clinical Pathologists*, 577 F. Supp. 1257, 1264 (D.N.J. 1983) (stating that under the Rehabilitation Act, "'assistance' connotes a transfer of government funds by way of subsidy, not merely an exemption from taxation"); *Johnny's Icehouse, Inc. v. Amateur Hockey Ass'n*, 134 F. Supp. 2d 965, 972 (N.D. Ill. 2001) ("In short, 'federal financial assistance' [under Title IX] encompasses only direct transfers of federal money, property or services from the government to a program.").

Because exemption from taxation is not a transfer of government money, property, or services, the Court relied upon an extraneous stray quote in *Regan v. Taxation with Representation*, 461 U.S. 540, 544 (1983), that "tax exemptions and tax-deductibility are a form of subsidy" and "has much the same effect as a cash grant to the organization."  However, the issue in *Regan*  was not the import or form of a tax exemption, and was not whether a tax exemption or tax benefit

constitutes federal financial assistance; the case did not involve Title IX or any spending clause legislation. Instead, the issue was the constitutionality of a provision in § 501(c)(3) of the Internal Revenue Code granting tax exemption to certain nonprofit organizations with "no substantial part of the activities of which is carrying on propaganda, or otherwise attempting to influence legislation." A nonprofit lobbying group challenged the constitutionality of that limitation on First Amendment and equal protection grounds, and the Supreme Court upheld the provision because Congress did not infringe on the rights of the nonprofit lobbying group when it chose to support certain activities:

> Both tax exemptions and tax deductibility are a form of subsidy that is administered through the tax system. A tax exemption has much the same effect as a cash grant to the organization of the amount of tax it would have to pay on its income. Deductible contributions are similar to cash grants of the amount of a portion of the individual's contributions.  The system Congress has enacted provides this kind of subsidy to nonprofit civic welfare organizations generally, and an additional subsidy to those charitable organizations that do not engage in substantial lobbying. In short, Congress chose not to subsidize lobbying as extensively as it chose to subsidize other activities that nonprofit organizations undertake to promote the public welfare.

461 U.S. 540 at 544. The Supreme Court concluded its opinion, stating "the issue in these cases is not whether TWR must be permitted to lobby, but whether Congress is required to provide it with public money with which to lobby. For the reasons stated above, we hold that it is not." *Id.* at 551.

*Regan* absolutely did not hold, conclude or even address whether tax exemptions, deductions or other tax benefits under the tax system are a form of federal financial assistance under Title IX or other spending clause legislation, and the stray quotation utilized by the Court in its decision was not even pertinent to the specifics of the Supreme Court's decision.  There is absolutely nothing in the *Regan* decision that gives any indication that the Supreme Court intended its use of the phrases "a form of subsidy" and "a cash grant" to have precedential value to the

present issue, or that the Supreme Court was equating tax benefits to federal financial assistance under spending clause legislation.

In fact, the Supreme Court's subsequent opinion in *NCAA v. Smith*, 525 U.S. 459 (1999), suggests the opposite. In *Smith*, the issue presented was whether the NCAA was the recipient of federal financial assistance to require compliance with Title IX when it received dues payments from its federally funded member schools, and the Supreme Court concluded that the NCAA was not.[2] The Supreme Court distinguished receipt of federal assistance either directly (such as via federal grant of money, property, or services) or through an intermediary (such as the receipt of federal grants of money given to students to pay for educational expenses), with the NCAA being an entity that "only benefited economically from federal assistance":

> Title IX coverage is not triggered when an entity merely benefits from federal funding. Thus, the regulation accords with the teaching of *Grove City* and *Paralyzed Veterans*: Entities that receive federal assistance, whether directly or through an intermediary, are recipients within the meaning of Title IX; entities that only benefit economically from federal assistance are not.

*Smith*, 525 U.S. at 468.

The fact that *Smith* was decided after the *Regan* decision is illustrative. In *Regan*, the Supreme Court remarked that tax exemptions and tax deductibility are benefits that are administered through the tax system, or otherwise stated, they are a form of federal assistance that provides an economic benefit to entities and individuals through the tax system. That is precisely the type of economic benefit described in *Smith* that the Supreme Court said was not federal financial assistance for purposes of Title IX.

---

[2] As a matter of public record, the NCAA is a § 501(c)(3) entity, but that did not stop the Supreme Court from concluding that a Title IX claim against it should be dismissed based upon the fact that the NCAA was not a recipient of federal financial assistance. If the NCAA's tax-exempt status constituted receipt of federal financial assistance, the *Smith* case would have been decided differently.

By way of further example, other federal benefits – but not transfers of federal money, property, or services – has not been classified as federal financial assistance in case law interpreting Title IX and other spending clause legislation. Licenses issued by federal agencies impart a valuable, monetary, benefit because they entitle the licensee to engage in a particular activity, but in *Community Television of Southern California. v. Gottfried*, 459 U.S. 498, 509-12 (1983), the Supreme Court noted that the Federal Communications Commission is not a funding agency and its issuance of television broadcasting licenses do not equal federal financial assistance for purposes of the Rehabilitation Act.  *See also Herman v. United Bhd. of Carpenters*, 60 F.3d 1375, 1381-82 (9th Cir. 1995) (concluding that union certification by the National Labor Relations Board is not federal financial assistance under the Rehabilitation Act).  In *Herman*, the Ninth Circuit also concluded that the federal financial assistance is not provided when the government establishes programs or regulations that support or establish guidelines for an entity's opinions.  *Id.  See also Rannels v. Hargrove*, 731 F. Supp. 1214, 1222-23 (E.D. Pa. 1990) (banking regulations and laws are not federal financial assistance under the Age Discrimination Act).  Government programs owned and operated by the Federal government, which provide services to the public, are also not categorized as federal financial assistance.  *See* 110 Cong. Rec. 13380 (1964) ("Activities wholly carried out by the United States with Federal funds, such as river and harbor improvements and other public works, defense installations, veteran's hospitals, mail service, etc. are not included in the list [of federally assisted programs]. Such activities, being wholly owned by, and operated by or for, the United States, cannot fairly be described as receiving Federal "assistance.").

With this clarity that 1) not all government assistance constitutes federal financial assistance, 2) that federal financial assistance entails receipt of federal money, property, or services, either directly or through an intermediary, and 3) that mere economic benefit provided

by the Federal government is not federal financial assistance, it is clear that a tax exemption for charitable entities under 26 U.S.C. § 501(c)(3) does not constitute receipt of federal financial assistance under Title IX or other spending legislation.  As stated in *Johnny's Icehouse, Inc.,* 134 F. Supp. 2d at 972, while Congress conditions tax-exempt status on an organization confirming to specific categories of charity, Congress did not and has never included within the Internal Revenue Code a condition whereby those tax-exempt entities are subject to the nondiscrimination requirements of Title IX. *See also* ECF No. 116-1 (The Private Schools Nondiscrimination and Due Process Act of 1979, S.B. 995, reprinted in 1979 Cong. Rec. S8436 (daily ed. Apr. 24, 1979), stating in the "Declaration of Congressional Policy" that "various Acts of Congress which condition Federal financial assistance to grantees, such as Title VI of the Civil Rights Act of 1964 and Title IX of the Education Amendments of 1972, do not apply to organizations simply because they are tax-exempt").

In addition to *Johnny's Icehouse*, prior court decisions from across the country have affirmed or at a minimum suggested that an entity's § 501(c)(3) status does not constitute federal financial assistance for purposes of Title IX or other spending statutes.  *See Zimmerman v. Poly Prep Country Day Sch.*, 888 F. Supp. 2d 317, 332 n.2 (E.D.N.Y. 2012) ("They further allege that Poly Prep enjoys tax-exempt status. Courts have held, however, that such status does not constitute federal financial assistance within the meaning of Title IX."); *Stewart v. N.Y. Univ.*, 430 F. Supp. 1305, 1314 (S.D.N.Y. 1976) ("The Court of Appeals for the Second Circuit has held that the granting of tax deductions and exemptions 'creates only a minimal and remote involvement' by the government in the activities of the recipient, and the Court finds the Federal tax benefits granted to the Law School insufficient to support a claim under § 2000d or § 1681.") (internal citations omitted); *Russo v. Diocese of Greensburg*, Civil Action No. 09-1169, 2010 U.S. Dist. LEXIS

96338, at *9 (W.D. Pa. Sep. 15, 2010) (expressing doubt without necessarily deciding that "obtaining tax exempt status would transform a private, parochial school into a recipient of Federal Financial Assistance for purposes of Title IX"); *McKeon v. Cent. Valley Cmty. Sports Found.*, 2019 U.S. Dist. LEXIS 221881, at *15 (E.D. Cal. Dec. 27, 2019) (tax credits are not federal financial assistance under Rehabilitation Act); *Merrifield v. Beaven/Inter-Am. Cos.*, 1991 U.S. Dist. LEXIS 12128, at *11 (N.D. Ill. Aug. 29, 1991) (tax-exempt status is not "federal financial assistance" under Rehabilitation Act); *Bachman v. Am. Soc'y of Clinical Pathologists*, 577 F. Supp. 1257, 1264 (D.N.J. 1983) (same).[3]

This case law is consistent with the way that that federal administrative agencies have operated for decades because the fact of the matter is that no federal agency has ever considered tax-exempt status as constituting federal financial assistance to require compliance with Title IX. For example, the United States Small Business Administration (SBA) was charged with administration of the Paycheck Protection Program (PPP) created in response to the COVID-19 pandemic. The Small Business Administration, like the Department of Education, has regulations including a prohibitions against discrimination on the basis of sex in any education program or activity receiving federal financial assistance. *See, e.g.*, 13 C.F.R. § 113.100, et. seq. The same regulations define "Federal financial assistance" in a manner that is substantively identical to the definition under the Department of Education regulation. *See* 13 C.F.R. § 113.105. Whether the

---

[3] In contrast to these decisions, the Court's reference to *M.H.D. v. Westminster Schools*,172 F.3d 797, 802 n.12 (11th Cir. 1999) for the proposition that "the Eleventh Circuit concluded that the appellant's allegation that tax exempt qualifies as 'federal financial assistance' under Title IX provision was 'neither immaterial nor wholly frivolous'" is wholly misguided. First, the issue in *M.H.D.* was whether the statute of limitations barred the appellant's claims, which has nothing to do with the issue presented in CPS' Motion. Second, Title IX and federal financial assistance was only mentioned in passing, and only with regard to whether the Federal court had subject matter jurisdiction. Third, the Eleventh Circuit in *M.H.D.* "express[ed] no view on the question whether a federal tax exemption actually constitutes 'Federal financial assistance' under Title IX." Thus, the reference to Title IX and federal financial assistance was not only dicta, it was dicta on a question not presented in CPS' Motion, and the Court did not even address the legal question in its dicta. *M.H.D.* has not meaningful impact on this case. The other District Court cases cited by the Court pre-dated the Supreme Court's decision in *Smith*.

receipt of a PPP loan constituted federal financial assistance was of particular concern to religious based entities, many of whom are § 501(c)(3) entities, and accordingly, the SBA issued guidance entitled "Frequently Asked Questions Regarding Participation of Faith-Based Organizations in The Paycheck Protection Program (PPP) and The Economic Injury Disaster Loan Program (EIDL)," which stated in relevant part:

> Receipt of a loan through any SBA program constitutes Federal financial assistance and carries with it the application of certain nondiscrimination obligations. Any legal obligations that you incur through your receipt of this loan are not permanent, and once the loan is paid or forgiven, those nondiscrimination obligations will no longer apply.

ECF No. 116-2. That guidance, however, would be superfluous and irrelevant if those faith-based organizations were already required to comply with those nondiscrimination obligations due to their § 501(c)(3) tax status. That is, if the recipient's legal nondiscrimination obligations end when the loan is paid or forgiven, it is obvious that the recipient would not have such legal obligations before receipt of the loan based upon their § 501(c)(3) status. This is strong evidence that Federal agencies do not even view § 501(c)(3) status as the equivalent of federal financial assistance.

Moreover, in the context of Title VI, which is another spending clause statute, the Department of Justice is charged with investigating certain complaints and as part of that investigation, the Department has to first determine whether Title VI applies to the entity that is the subject of the complaint. Setting forth the standards for that determination, the Department of Justice has published its Title VI Legal Manual which in part confirms that tax benefits are not federal financial assistance "because they are not contractual in nature":

> Typical tax benefits, tax exemptions, tax deductions, and most tax credits are not considered federal financial assistance. Unlike grants, most typical tax benefits are not included in the statutory or regulatory definitions of federal financial assistance because they are not contractual in nature. *See, e.g.*, 42 U.S.C. § 2000d-1; 28 C.F.R. § 42.102(c); 31 C.F.R. § 28.105. Most courts that have considered the issue have concluded that typical tax benefits are not federal assistance.

*See* Exhibit 1 at 24.[4]  This analysis is supported by the Supreme Court's decision in *United States DOT v. Paralyzed Veterans of Am.*, 477 U.S. 597, 605-06 (1986), in which the Court stated that with spending clause legislation, "Congress enters into an arrangement in the nature of a contract with the recipients of the funds: the recipient's acceptance of the funds triggers coverage under the nondiscrimination provision."  *See also Soberal-Perez v. Heckler*, 717 F.2d 36, 41 (2d Cir. 1983) ("This emphasis upon the contractual nature of the receipt of federal moneys in exchange for a promise not to discriminate is still another reason to conclude that Title VI does not cover direct benefit programs since these programs do not entail any such contractual relationship"), *cert. denied*, 466 U.S. 929 (1984)).  Because the requirement is couched as a type of contractual obligation, Congress imposes the obligations of [the spending clause legislation] upon those who are in a position to accept or reject those obligations as a part of the decision whether or not to 'receive' federal funds."  *Paralyzed Veterans of Am*., 477 U.S. at 606.

In this case, CPS does not receive any transfers of federal money, property or services from the Federal government by means of its § 501(c)(3) tax-exempt status.  It is illogical and unreasonable to conclude that a business entity that has a tax exemption as a § 501(c)(3) charitable entity, or that takes a deduction on its federal tax return for contributions to charity, has chosen to accept federal financial assistance and must comply with the obligations of Title VI, Title IX and other spending legislation.

The Court, however, then relies on *Bob Jones University* for the principle that "tax exempt institutions 'must demonstrably serve and be in harmony with the public interest.'"  ECF No. 130 at 10.  The Court concluded that because CPS is a § 501(c)(3) tax-exempt entity, it must not engage in illegal or activities contrary to public policy, and because discrimination on the basis of sex is

---

[4] Also available at https://www.justice.gov/crt/book/file/1364106/download (last visited August 3, 2022).

both, CPS is bound by the requirements of Title IX.  The public policy against discrimination based on sex, however, does not mean that all tax-exempt entities must comply with Title IX; those are two separate and distinct issues.

The impetus for *Bob Jones University* was the IRS' issuance of Revenue Ruling 71-447 which stated that "[a] private school that does not have a racially nondiscriminatory policy as to students does not qualify for [a § 501(c)(3)] exemption."  Stated otherwise, the IRS Revenue Ruling was that a school could not have § 501(c)(3) status if it had a policy that discriminated based on race.  After issuance of the Revenue Ruling, the IRS revoked the tax-exempt status of two schools (Bob Jones University and Goldsboro Christian Schools).  Both schools challenged the IRS' decision but the Supreme Court rejected their arguments.  The Supreme Court concluded that the intent of the § 501(c)(3) tax exemption is that "an institution seeking tax-exempt status must serve a public purpose and not be contrary to established public policy" and must meet "certain common-law standards of charity."  *Id.* at 587.  "Congress sought to provide tax benefits to charitable organizations, to encourage the development of private institutions that serve a useful public purpose or supplement or take the place of public institutions of the same kind."  *Id.* at 588. The Supreme Court then noted a "corollary of the public benefit principle" being that "the purpose of a charitable trust may not be illegal or violate established public policy."  *Id.* at 590.  Thus, the Supreme Court stated:

> History buttresses logic to make clear that, to warrant exemption under § 501(c)(3), an institution must fall within a category specified in that section and must demonstrably serve and be in harmony with the public interest. The institution's purpose must not be so at odds with the common community conscience as to undermine any public benefit that might otherwise be conferred.

*Id.* at 591-92.

To prevent the sway of public opinion from changing an organization's tax status, the Supreme Court further explained that the designation of what is and is not "public benefit and public policy are sensitive matters with serious implications for the institutions affected; a declaration that a given institution is not 'charitable' should be made only where there can be no doubt that the activity involved is contrary to a fundamental public policy." *Id.* at 592. The Supreme Court then concluded that "there can no longer be any doubt that racial discrimination in education violates deeply and widely accepted views of elementary justice," and affirmed the denial of tax-exempt status to the schools because "[i]t would be wholly incompatible with the concepts underlying tax exemption to grant the benefit of tax-exempt status to racially discriminatory educational entities, which 'exer[t] a pervasive influence on the entire educational process.'" *Id.* at 592-95.

*Bob Jones* University, however, absolutely did not hold, conclude or even address whether the § 501(c)(3) tax exemptions is a form of federal financial assistance. The Supreme Court never addressed the impact of the tax exemption under Title IX or other spending clause legislation. Instead, the Supreme Court's holding was that an organization's purpose must be charitable to obtain the tax exemption. Neither that holding, nor the rationale behind it, is present in this case because there is no allegations of any racially discriminatory admissions policies in this case. There is no allegation, and no facts in the record, that the purpose of CPS is discriminatory. Instead, the allegations are that CPS failed to adequately prevent and remedy student-on-student sexual harassment. As the Court noted, this case involves "allegations of sexual assault and verbal sexual harassment by male students at the school" "and allegations "that school officials failed to adequately address their numerous complaints or take any meaningful action in response." ECF No. 130 at 2-3. Incidents of alleged student-on-student harassment, and CPS' response thereto, is

wholly different than a school admissions policy that discriminates based upon race and was created, enacted, and enforced by those responsible for operating the school, such that the purpose of the school could be deemed to be discriminatory.  While the racially discriminatory admissions policies in *Bob Jones University* rendered the purposes of those educational institutions so at odds with public policy and "common community conscience" that those schools could not be considered to express the common law standards of charity, the same cannot be said for CPS.  If this were the law it would mean that every § 501(c)(3) entity would lose that tax status if it was accused and proven to have failed to prevent harassment, as distinct from having a policy that mandated discrimination. Unlike the schools at issue in *Bob Jones* University, where the discriminatory admission policy rendered the purpose of the school contrary to a fundamental public policy, the allegations that CPS failed to live up to its alleged duties to respond to and remediate incidents of student-on-student sexual harassment do not rise to the level to conclude that the purpose of the school is contrary to a fundamental public policy.

Of course, this is not to say that an entity exempt from taxation under § 501(c)(3) is permitted to discriminate on the basis of sex or ignore reports of incidents of sexual harassment; to the contrary, there are common law principles and claims to address those issues as demonstrated by the fact that Plaintiffs have pled various negligence theories under tort law.  The present legal issue, however, is whether a specific law, Title IX, applies to CPS based upon the school's § 501(c)(3) tax-exempt status.  Equating the analysis of that issue with whether sex discrimination is unlawful or against public policy was clear error by the Court and the decision must be reconsidered.

## II.    MOTION FOR CERTIFICATION OF AN INTERLOCUTORY APPEAL

In the alternative, CPS requests the Court to amend its Order and Memorandum Opinion of July 21, 2022, ECF Nos. 131 and 130, to state that the Order and Memorandum Opinion involve a controlling question of law regarding whether tax exemption under 26 U.S.C. § 501(c)(3) constitutes receipt of federal financial assistance for purposes of Title IX of the Education Amendments Act of 1972, as to which there is substantial ground for difference of opinion, and that an immediate appeal from the Order may materially advance the ultimate termination of the litigation.

"A district court's order denying a motion for summary judgment or denying a motion to dismiss is interlocutory and may be appealed only . . . if the district court certifies under 28 U.S.C. § 1292(b) that the order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." *Georgetown Coll. v. Madden*, 660 F.2d 91, 96-97 (4th Cir. 1981).

The decision to permit an interlocutory appeal under § 1292(b) is within the district court's discretion. *See Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 47 (1995); 16 Charles Alan Wright, et al., *Federal Practice & Procedure* § 3929 (3d ed. 2017) (explaining that § 1292(b) "is not limited by its language to 'exceptional' cases," but rather is characterized by its flexibility). However, § 1292(b) provides that a district court "shall" certify its order for interlocutory appeal when the court determines that its order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). *See also, e.g.,*); *Kennedy v. St. Joseph's Ministries, Inc.*, 657 F.3d 189, 195 (4th Cir. 2011). The use of the "shall" language in the statute means that when a district court determines that the statutory criteria are

present, it has a "duty. . . to allow an immediate appeal to be taken." *In re Trump*, 928 F.3d 360, 369 (4th Cir. 2019 (quoting *Ahrenholz v. Board of Trustees*, 219 F.3d 674, 677 (7th Cir. 2000)).

If the original order does not identify a question of law suitable for interlocutory appeal, it may be amended to include the requisite language. Fed. R. App. P. 5(a)(3) (calling for the district court to "amend its order, either on its own or in response to a party's motion, to include the required permission or statement"); *Halliburton Co. Benefits Comm. v. Graves*, 191 F. App'x 248, 251 (5th Cir. 2006) (per curiam) (advising parties seeking review of a partial summary judgment order to "move the district court to amend its order to include the 28 U.S.C. § 1292(b) certification language, pursuant to Fed. R. App. P. 5(a)(3)").

### A. THE ORDER INVOLVES A CONTROLLING QUESTION OF LAW REGARDING WHETHER TITLE IX APPLIES TO § 501(C)(3) ENTITIES

The first element under § 1292(b) is that the case present a controlling question of law. A controlling question of law is defined by the Fourth Circuit as a "pure question of law" or "an abstract legal issue that the court of appeals can decide quickly and cleanly." *Int'l Refugee Assistance Project v. Trump*, 404 F. Supp. 3d 946, 950 (D. Md. 2019) (quoting *United States ex rel. Michaels v. Agape Senior Cmty., Inc.*, 848 F.3d 330, 340 (4th Cir. 2017) (quoting in turn *Mamani v. Berzain*, 825 F.3d 1304, 1312 (11th Cir. 2016)). A pure question of law does not require the appellate court "to delve beyond the surface of the record in order to determine the facts." *Agape Senior Cmty, Inc*., 848 F.3d at 341 (quoting *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004)), but refers to "'a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine' – as opposed to 'whether the party opposing summary judgment had raised a genuine issue of material fact.'" *Coal. For Equity & Excellence in Md. Higher Educ. v. Md. Higher Educ. Comm'n*, No. CCB-06-2773, 2015 U.S. Dist. LEXIS 83741, at *13 (D. Md. June 29, 2015) (quoting *Lynn v. Monarch Recovery Mgmt.*, 953 F.

Supp. 2d 612, 623 (D. Md. 2013) (quoting in turn *Clark Constr. Grp., Inc. v. Allglass Sys., Inc.*, No. DKC-02-1590, 2005 U.S. Dist. LEXIS 5278, at *2 (D. Md. March 30, 2005)).

In order for the question of law to be "controlling," it does not have to resolve the action in its entirety; instead, a controlling question of law includes those that are dispositive in other respects such as whether a particular claim exists, whether a particular defense is available to defeat a claim, and questions relating to subject matter jurisdiction. *See* 3 Moore's Manual – Federal Practice and Procedure § 27.04 (2022). Certainly, "a 'controlling' question of law clearly includes every order that, 'if erroneous, would be reversible error on final appeal,'" but it also includes a question "'if interlocutory reversal might save time for the district court, and time and expense for the litigants.'" *Coal. For Equity & Excellence in Md. Higher Educ.*, 2015 U.S. Dist. LEXIS 83741, at *13 (quoting *Lynn*, 953 F. Supp. 2d at 623 *(*quoting in turn *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir.), *cert. denied*, 419 U.S. 885 (1974), and 16 Wright et al., Federal Practice & Procedure § 3930).

Otherwise stated, as the Third Circuit put it in *Katz*, a question is controlling if it is "serious to the conduct of the litigation, either practically or legally." 496 F.2d at 755 (citing Hearings Before Subcommittee No. 3 of the House Committee on the Judiciary on H.R. 6238, 85th Cong., 2d Sess., ser. 21 (1958) (legislative history); *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982) ("[A]ll that must be shown in order for a question to be 'controlling' is that resolution of the issue on appeal could materially affect the outcome of litigation in the district court.").

In this case, it can hardly be disputed that whether Title IX applies to CPS because it is a tax-exempt § 501(c)(3) entity is a pure question of law on an abstract legal issue that can decided quickly and cleanly without delving into the factual record. The only relevant fact is that CPS is

a tax-exempt § 501(c)(3) entity, and that fact is undisputed.  The legal issue of whether that tax exemption constitutes federal financial assistance for purposes of Title IX is a pure question of law or abstract legal issue that can be decided without any consideration of the factual record.

Additionally, the question of law is controlling because the Court's Order, if erroneous, would be reversible on appeal.  If tax-exempt status under § 501(c)(3) does not constitute receipt of federal financial assistance under Title IX, CPS is not required to comply with Title IX, and Plaintiffs cannot state a cause of action for violation of the statute.  Whether a party can pursue a legal claim as a matter of law is a quintessential example of a legal issue that could significantly and materially affect the conduct and outcome of the litigation.  *See, e.g., United States v. UPS Customhouse Brokerage, Inc.*, 30 C.I.T. 1612, 1618–1619 (Ct. Int'l Trade 2006) (question of whether certain damages were available under statute); *Bergeron v. Atl. Pac. Marine*, 899 F. Supp. 1544, 1550 (W.D. La. 1993) (question of whether a claim for punitive damages and/or loss of consortium was available to plaintiff and/or his wife).

Moreover, if the Fourth Circuit finds that a CPS has not received federal financial assistance as defined under Title IX, such that Title IX does not apply to the school, it could also significantly and materially affect the litigation because it would remove a significant part of Plaintiffs' case against CPS, including damages that are recoverable under Title IX but not under Plaintiffs' other tort theories.  Furthermore, the Court would lack original subject-matter jurisdiction over the litigation.  The cause of action under Title IX is the only claim that asserts a federal question over which the Court has subject matter jurisdiction; the remaining claims are based upon theories of negligence, premises liability, and tort liability under Maryland law under which the Court has supplemental jurisdiction.  Therefore, the resolution of the Title IX question of law could result in dismissal of Plaintiffs' Complaint for want of subject matter jurisdiction,

and jurisdictional questions impacting whether a court has subject matter jurisdiction to hear the case present a controlling question of law.  *See, e.g., Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro In Amministrazione Straordinaria*, 921 F.2d 21, 24 (2d Cir. 1990) ("[W]e have granted certification when the order involved issues of in personam and subject matter jurisdiction. *See, e.g., Leasco Data Processing Equip. Corp. v. Maxwell*, 468 F.2d 1326, 1330 (2d Cir. 1972)."); *Harris v. TJX Cos.*, 60 F. Supp. 2d 562, 565 (W.D. Va. 1999) (order denying motion to dismiss for lack of subject matter jurisdiction certified for interlocutory appeal); *Mizell v. Eli Lilly & Co.*, 526 F. Supp. 589, 597 (D.S.C. 1981) (certifying question of whether it was appropriate to dismiss third-party defendant for lack of subject matter jurisdiction); *Kenrose Mfg. Co. v. Fred Whitaker Co.*, 53 F.R.D. 491 (W.D. Va. 1971) (same).

Lastly, other courts have defined a controlling question of law as "one that substantially affects a large number of cases." *Shipping Corp. of India, Ltd. v. Am. Bureau of Shipping*, 752 F. Supp. 173, 175 (S.D.N.Y. 1990) ("On the issue of precedential value, plaintiff has made no showing that there are other cases in this Circuit involving the same issue. Rather, it appears to this court that the issue is somewhat unique.") (citing *Department of Economic Development v. Arthur Andersen & Co.*, 683 F. Supp. 1463, 1486-87 (S.D.N.Y. 1988); *Herold v. Braun*, 671 F. Supp. 936, 938 (E.D.N.Y. 1987); and *Abortion Rights Mobilization, Inc. v. Regan*, 552 F. Supp. 364, 366 (S.D.N.Y. 1982)).  *See also In re Facebook, Inc.*, 986 F. Supp. 2d 524, 536 (S.D.N.Y. 2014) (stating that "[t]he impact an appeal will have on other cases need not be large, but it 'is a factor that [the court] may take into account'"); *Primavera Familienstifung v. Askin*, 139 F. Supp. 2d 567, 570 (S.D.N.Y. 2001).

The resolution of the issue presented for certification, whether tax exemption under 26 U.S.C. § 501(c)(3) constitutes receipt of federal financial assistance for purposes of Title IX, will

have a precedential impact on other ongoing and future cases where students will be able to pursue Title IX litigation against other independent private schools solely based upon the schools' § 501(c)(3) tax-exempt status, or such claims will be rejected as a matter of law.  Moreover, the question of law is controlling because its resolution on appeal will have a significant impact on implementation of processes and procedures in independent private schools across this jurisdiction.  Proof of the impact that appellate resolution of the legal issue presented will have even comes directly from Plaintiffs' liability expert in this case, Brett Sokolow, who published an article on JDSupra.com describing that the decision "will likely soon be sending shockwaves through private K-12 education, and religiously affiliated schools" and that "[a]n appeal would not be surprising":

> Judge Bennett's ruling on partial summary judgment against CPS will likely soon be **sending shockwaves** through private K-12 education, and religiously affiliated schools. Judge Bennett's decision did not address the larger question of whether this analysis might apply to all 501(c)(3) organizations with an educational component, but it has that potential implication.

*See* Exhibit 2 (emphasis added).[5]  If Plaintiffs' own expert described the Court's decision as "sending shockwaves" through the education community, it cannot seriously be disputed that this is a controlling legal question that should be addressed on appeal sooner rather than later. Obtaining prompt and efficient appellate review of this discrete legal issue is important for the community of independent private schools in the Fourth Circuit because otherwise, these independent private schools will be kept in limbo regarding what obligations they have under Title IX while the five cases pending against CPS are litigated through trial likely into 2024.  Moreover, the impact of a decision equating § 501(c)(3) tax exemption with federal financial assistance could have profound impacts on all non-profit entities even outside of the context of education.

---

[5] Also available at https://www.jdsupra.com/legalnews/are-private-k-12-schools-subject-to-8012462 (last visited August 3, 2022).

The Supreme Court has stated that the preconditions for § 1292(b) review "are most likely to be satisfied when a privilege ruling involves a new legal question or is of special consequence, and district courts should not hesitate to certify an interlocutory appeal in such cases." *Mohawk Indus. v. Carpenter*, 558 U.S. 100, 110-11 (2009). This is one of those cases.

### B.     THERE IS A SUBSTANTIAL GROUND FOR DIFFERENCE OF OPINION

The second element under § 1292(b) is that the issue presents a substantial ground for difference of opinion. "An issue presents a substantial ground for difference of opinion if courts, as opposed to parties, disagree on a controlling legal issue." *Lynn*, 953 F. Supp. 2d at 624 (quoting *Randolph v. ADT Sec. Servs. Inc.*, 2012 U.S. Dist. LEXIS 10469, at *6 (D. Md. January 30, 2012)).

From the courts-perspective, a substantial ground for difference of opinion may exist where there is "a dearth of precedent within the controlling jurisdiction and conflicting decisions in other circuits," or "where a court's challenged decision conflicts with decisions of several other courts." *Coal. For Equity & Excellence in Md. Higher Educ.*, 2015 U.S. Dist. LEXIS 83741, at *16 (quoting *APCC Servs., Inc. v. Sprint Commc'ns Co.*, 297 F. Supp. 2d 90, 97-98 (D.D.C. 2003)). Courts also find substantial grounds for difference of opinion "if novel and difficult questions of first impression are presented." *Ekstrom v. Cong. Bank*, Civil Action No. ELH-20-1501, 2021 U.S. Dist. LEXIS 6628, at *6-7 (D. Md. Jan. 13, 2021) (quoting *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010)).

In this case, there can also be no dispute that there is a substantial ground for difference of opinion on whether tax exemption under 26 U.S.C. § 501(c)(3) constitutes receipt of federal financial assistance for purposes of Title IX. Specifically, as the Court is aware, the issue presented is one of first impression in this Circuit and the Supreme Court has not addressed whether tax-exempt status under 26 U.S.C. § 501(c)(3) constitutes federal financial assistance for purposes of

Title IX.  ECF No. 130 at 8-9.  Additionally, there are now conflicting decisions in between courts in various circuits, as the Court held that § 501(c)(3) tax exemption constitutes federal financial assistance for purposes of Title IX, while the Northern District of Illinois reached the opposite conclusion in *Johnny's Icehouse, Inc.*  Other courts addressing the issue have expressed the same conclusion, or doubt that tax exemption equals federal financial assistance.  *See Zimmerman*, 888 F. Supp. 2d at 317; *Stewart*, 430 F. Supp. at 1314; *Russo*, Civil Action No. 09-1169, 2010 U.S. Dist. LEXIS 96338, at *9; *McKeon*, 2019 U.S. Dist. LEXIS 221881, at *15; *Merrifield*, 1991 U.S. Dist. LEXIS 12128, at *11; *Bachman*, 577 F. Supp. at 1264.  The Court rejected the rationale of those cases when it denied CPS' Partial Motion to Dismiss or in the Alternative for Summary Judgment, thus creating the very substantial grounds for difference of opinion warranting interlocutory appeal.  This case is the prototypical example of an issue on which there is substantial grounds for difference of opinion.

### C.   AN IMMEDIATE APPEAL OF THE ORDER WOULD MATERIALLY ADVANCE THE ULTIMATE TERMINATION OF THIS LITIGATION (AND THE FOUR OTHER CASES AGAINST CPS)

The third and final element under § 1292(b) is that an immediate appeal "may materially advance the ultimate termination of the litigation." *Fitch v. State*, No. PJM 18-2817, 2022 U.S. Dist. LEXIS 105412, at *18 (D. Md. June 9, 2022) (quoting *Hammons v. Univ. of Md. Med. Sys. Corp.*, Civil Action No. DKC 20-2088, 2021 U.S. Dist. LEXIS 205556, at *15 (D. Md. Oct. 25, 2021)) (citing *Lynn*, 953 F. Supp. 2d at 626).  This inquiry replicates much of the first prong of the § 1292(b) analysis. *Id.*; Wright, et al., *Federal Practice & Procedure* at § 3930

"In deciding whether certification will materially advance the ultimate termination of the litigation, 'a district court should consider whether an immediate appeal would: (1) eliminate the need for trial, (2) eliminate complex issues so as to simplify the trial, or (3) eliminate issues to

make discovery easier and less costly.'" *Ekstrom*, 2021 U.S. Dist. LEXIS 6628, at *8 (quoting *Goodman v. Archbishop Curley High School, Inc.*, 195 F. Supp. 3d 767, 773 (D. Md. 2016) (quoting in turn *Coal. For Equity & Excellence in Md. Higher Educ.*, 2015 U.S. Dist. LEXIS 83741, at *13)).

An immediate interlocutory appeal of the question of law whether tax exemption under 26 U.S.C. § 501(c)(3) constitutes receipt of federal financial assistance for purposes of Title IX may materially advance the ultimate termination of this case because if the Fourth Circuit concludes that the tax exemption is not federal financial assistance, it would eliminate the need for further proceedings relative to Title IX and the Court would lack original subject matter jurisdiction. Additionally, even if the Court elected to exercise supplemental jurisdiction, the litigation would be narrowed and proceed in a more efficient and streamlined manner, including narrowing the scope of potential relief available to Plaintiffs. Knowing the result of the appeal and what damages are recoverable based upon the claims asserted would undoubtably materially advance the termination of the case. *See New York v. Gutierrez*, 623 F. Supp. 2d 301, 317 (E.D.N.Y. 2009) ("Here, certification and reversal of the order allowing intervenor-plaintiffs to proceed against ASMFC would result in dismissal of all claims against ASMFC, eliminating the only non-federal defendant and all state law issues from the case. It would also substantially narrow the scope of potential relief available to plaintiffs."); *U.S. Philips Corp. v. Sears Roebuck & Co.*, Miscellaneous Docket No. 361, 1992 U.S. App. LEXIS 37824, at *5 (Fed. Cir. Dec. 10, 1992) ("[R]eviewing these interlocutory appeals will determine with finality which claims will proceed to trial and, thus, may materially advance the ultimate termination of the litigation."); *Associated Mills, Inc. v. Drake Hotel, Inc.*, 334 N.E.2d 746, 748 (Ill. App. 1975) (certifying question for appellate review because

"it will determine whether the defendant is exposed to liability in the amount of $ 87,122.80, as contended by plaintiff, or $ 250 or some lesser sum, as contended by defendant").

Moreover, this is one of five cases that present the same issue regarding whether CPS' tax-exempt status under 26 U.S.C. § 501(c)(3) constitutes federal financial assistance for purposes of Title IX.  It would be far more efficient to know the result of the appeal now and whether Title IX applies to CPS in the five cases based upon their tax exemption status, as opposed to trying five cases over many weeks and then appealing each of the cases to the Fourth Circuit.

Furthermore, not knowing the result of the appeal will also hamstring the parties and have an impact on any future settlement discussions.  As the Court is aware, recoverable damages on the Title IX claim differ from the recoverable damages under Maryland state law negligence and tort claims, and the parties need to know the result of the appeal to know the ceiling or range of recoverable damages to limit or frame future settlement discussions.  Conversely, going into settlement negotiations without knowing the result of the appeal would impair the parties' ability to reach a potential resolution and would protract the litigation because it would require the parties to litigate all five cases through trial and then appeal.  Thus, granting the interlocutory appeal, regardless of the eventual decision, would advance the termination of the litigation.  *See  Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 536 (7th Cir. 2012) (stating that "uncertainty" about whether a claim asserted was viable "may delay settlement (almost all class actions are settled rather than tried), and by doing so further protract the litigation. That is enough to satisfy the "may materially advance" clause of section 1292(b) . . . ."); *Scott v. Ruston La. Hosp. Co*., No. 16-0376, 2017 U.S. Dist. LEXIS 56138, at *15-16 (W.D. La. Apr. 12, 2017) ("The Court also finds that a decision on this issue may help to advance settlement, a factor that courts have found significant in permitting interlocutory appeals to proceed. . . . This is particularly true if this Court's decision

is affirmed, as it will set a ceiling for the amount of damages that Plaintiffs may recover at all and limit settlement discussions to the range of damages available under the LMMA's damages caps."); *Ka Kin Wong v. HSBC Bank USA (In re Lehman Bros. Holdings Inc.)*, 2011 U.S. Dist. LEXIS 124313, at *9 (S.D.N.Y. Oct. 26, 2011) ("Disrupting the settlement process, which narrows the field of issues remaining before the Bankruptcy Court, is antithetical to advancing the termination of the litigation."); *TEFFT v. A.C. & S., INC.*, No. C80-924M; No. C81-179M; No. C81-533M, 1983 U.S. Dist. LEXIS 17150, at *11 (W.D. Wash. May 6, 1983) ("knowing the viability of this very important defense will affect settlement negotiations").

Moreover, an interlocutory appeal on the Title IX issue would not impede the progress of the litigation because it would not stay trial proceedings or prevent the Court from resolving the forthcoming Motion for Summary Judgment.  As noted above, based upon the extensive discovery that has been conducted, many of the allegations in Plaintiffs' Complaint are not factually accurate and/or there is no evidence to support the allegations.  CPS will raise those arguments in its Motion for Summary Judgment, which can proceed while the Fourth Circuit Court of Appeals considers the interlocutory appeal.

## CONCLUSION

The question presented above for interlocutory appeal meets that standard and is of special consequence to five pending cases, not to mention the many private schools within this jurisdiction and Circuit that are tax-exempt § 501(c)(3) entities.  As the Court's ruling on CPS' Partial Motion to Dismiss or in the Alternative for Summary Judgment represents new law on an issue of first impression in this Circuit, if the Order is not reconsidered, the Court should certify the issue for immediate interlocutory appeal.

WHEREFORE, CPS respectfully requests that the Court reconsider the Order and accompanying Memorandum Opinion, or in the alternative, amend its Order and Memorandum Opinion to state that the Order and Memorandum Opinion involve a controlling question of law regarding whether tax exemption under 26 U.S.C. § 501(c)(3) constitutes receipt of federal financial assistance for purposes of Title IX of the Education Amendments Act of 1972, as to which there is substantial ground for difference of opinion, and that an immediate appeal from the Order and Memorandum Opinion may materially advance the ultimate termination of the litigation.

Respectfully submitted,

/s/Gregg E. Viola
Gregg E. Viola (25737)
ECCLESTON & WOLF, P.C.
Baltimore-Washington Law Center
7240 Parkway Drive, 4th Floor
Hanover, MD 21076-1378
(410) 752-7474 (phone)
(410) 752-0611 (fax)
E-mail: viola@ewmd.com
Attorney for Defendant

/s/Mark P. Johnson
Mark P. Johnson (29091)
ECCLESTON & WOLF, P.C.
Baltimore-Washington Law Center
7240 Parkway Drive, 4th Floor
Hanover, MD 21076-1378
(410) 752-7474
(410) 752-0611 (fax)
E-mail: johnson@ewmd.com
Attorney for Defendant

/s/Eric M. Rigatuso
Eric M. Rigatuso (27605)
ECCLESTON & WOLF, P.C.
Baltimore-Washington Law Center
7240 Parkway Drive, 4th Floor
Hanover, MD 21076-1378
(410) 752-7474 (phone)
(410) 752-0611 (fax)
E-mail: rigatuso@ewmd.com
Attorney for Defendant

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 4th of August, 2022, copies of the foregoing were served via the Court's ECF System to all counsel of record.

*/s/Eric M. Rigatuso*
Eric M. Rigatuso (Bar # 27605)
