# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND
### Northern Division

| | | |
|---|---|---|
| **DONNA BUETTNER-HARTSOE, et al.** | * | |
| *Plaintiffs,* | * | |
| v. | * | **Case No.: 1:20-cv-03132-RDB** |
| **BALTIMORE LUTHERAN HIGH SCHOOL ASSOCIATION d/b/a CONCORDIA PREPARATORY SCHOOL** | * * * | |
| *Defendant.* | | |

\*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*

| | | |
|---|---|---|
| **JENNIFER PULLEN** | * | |
| *Plaintiff,* | * | |
| v. | * | **Case No.: 1:20-cv-03214-RDB** |
| **BALTIMORE LUTHERAN HIGH SCHOOL ASSOCIATION d/b/a CONCORDIA PREPARATORY SCHOOL** | * * * | |
| *Defendant.* | | |

\*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*

| | | |
|---|---|---|
| **ANDREA CONRAD, et al.** | * | |
| *Plaintiffs,* | * | |
| v. | * | **Case No.: 1:20-cv-03229-RDB** |
| **BALTIMORE LUTHERAN HIGH SCHOOL ASSOCIATION d/b/a CONCORDIA PREPARATORY SCHOOL, et al.** | * * * | |
| *Defendants.* | | |

\*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*

| | | |
|---|---|---|
| **ARIANA GOMEZ** | * | |
| *Plaintiff,* | * | |
| v. | * | **Case No.: 1:20-cv-03267-RDB** |
| **BALTIMORE LUTHERAN HIGH SCHOOL ASSOCIATION d/b/a CONCORDIA PREPARATORY SCHOOL, et al.** | * * | |
| | * | |
| *Defendant.* | * | |

\*        \*        \*        \*        \*        \*        \*        \*        \*        \*        \*        \*

| | | |
|---|---|---|
| **SELENA BARBER, et al.** | * | |
| *Plaintiffs,* | * | |
| v. | * | **Case No.: 1:21-cv-00691-RDB** |
| **BALTIMORE LUTHERAN HIGH SCHOOL ASSOCIATION d/b/a CONCORDIA PREPARATORY SCHOOL** | * * | |
| | * | |
| *Defendant.* | | |

\*        \*        \*        \*        \*        \*        \*        \*        \*        \*        \*        \*

## PLAINTIFFS' OPPOSITION TO DEFENDANT BALTIMORE LUTHERAN HIGH SCHOOL ASSOCIATION'S MOTION TO RECONSIDER AND MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL

**Ketterer, Browne & Associates**

Justin Browne (Bar No. 29164)
Christina Graziano *(admitted pro hac vice)*
Brian Ketterer (*admitted pro hac vice*)
Ketterer, Browne & Associates, LLC
336 S. Main Street
Bel Air, Maryland 21014
Phone: (855) 522-5297
Facsimile: (855) 334-5626
Justin@KBAattorneys.com
Christina@KBAattorneys.com
Brian@KBAattorneys.com
*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT …………………………………………………...11

STANDARD OF REVIEW ……………………………………………………...11

ARGUMENT ………………………………………………………….....……13

I.   This Court should Deny Defendant CPS's Motion for Reconsideration because its § 501(c)(3) Tax Exempt Status Constitutes "Federal Financial Assistance" Under Title IX and as such, no Clear Error was Made…………………………………………………14

   A.   It is Well-Established Law that a Tax Exemption under § 501(c)(3) Constitutes Federal Financial Assistance under Title VI and Title IX ………………………...14

      1.   Supreme Court and Federal Circuit Court Precedent on this Issue is Clear ……………………………………………………………..14

      2.   Defendant CPS's Argument that a § 501(c)(3) Tax-Exemption is Not the Type of "Government Assistance" or Economic Benefit Contemplated by Title IX Plainly Fails……………………………………………………16

      3.   Imposing the Mandates of Title IX on Tax-Exempt Schools is Consistent with the Objectives of Title IX and Other Anti-Discrimination Statutes..23

   B.   The Court Already Considered Defendant CPS's Argument – and the Case Law it Cites in Support - that its Tax-Exempt Status is Insufficient to Trigger Title IX's Mandates……………………………………………………………..25

   C.   Defendant CPS's Disagreement with this Court's Careful Consideration of Title IX Implications for a Tax-Exempt, Private School like CPS Does Not Warrant Reconsideration of a Court Order…………………………………..26

   D.   Defendant CPS's Receipt of Paycheck Protection Program (PPP) Loans Triggered Title IX Mandates During the Timeframe Relevant to H.C.'s Claims ……………………………………………………………..26

   E.   This Court Needn't Make a Sweeping Declaration with Respect to ALL § 501(c)(3) Tax-Exempt Entities…………………………………………29

II.   This Court should Deny Defendant CPS's Motion for Interlocutory Appeal where CPS Failed to Meet the Applicable Standard because the Issue at Hand is Not a Controlling Question of Law to Which there is a Substantial Ground for Difference of Opinion, Nor would an Appeal Materially Advance the Termination of the Instant Litigation…………30

      A.   Defendant CPS's Disagreement with the Court's Ruling Provides No Basis for Certification of an Extraordinary Interlocutory Appeal……………………...32

1.  The Court's Order Contains No Controlling Question of Law
    Regarding Whether Title IX Applies to § 501(c)(3) Entities………..33

B.  There is Not a Sufficiently Substantial Ground for Difference of Opinion….36

C.  Defendant CPS's Argument that an Interlocutory Appeal would Materially
    Advance this Litigation Fails…………………………………………………...38

CONCLUSION ……………………………………………………………………....…40

CERTIFICATE OF SERVICE…………………………………………………………...41

# **TABLE OF AUTHORITIES**

**CASES**:

*Ahrenholz v. Bd. of Trs. of Univ. of Ill*
219 F.3d 674, 677 (7th Cir. 2000)…………………………………………….……………34

*Awah v. Mansfield Kaseman Health Clinic*
2021 WL 6197415 (D. Md. Dec. 30, 2021)……………………………………….…………...27

*Beck v. Commc'ns Workers of Am.*
468 F. Supp. 93, 95- 96 (D. Md. 1979)…………………………………………….……………30

*Bob Jones University v. United States*
461 U.S. 574 (1983)…………………………………………………………………………..16,17

*Brooks v. Circuit City Stores*
No. DKC–95–3296, 1997 WL 679899, at *1 (D.Md. Sept.16, 1997) (citing *In re Flor*, 79 F.3d
281, 284 (2d
Cir.1996))………………………………………………………………….……………37

*Butler v. DirectSAT USA, LLC*
307 F.R.D. at 453…………………………………………………………….……31,35

*Butler v. DirectSAT USA, LLC*
307 F.R.D. 445, 452 (D. Md. 2015)……………………………………………………...34

*Cannon v. University of Chicago*
441 U.S. 677, 717 (1979)……………………………………………………..14, 16, 23,25,38

*Carbotrade v. Bureau Veritas,*
1993 WL 60567 (S.D.N.Y. March 2, 1993)…………………………………………………..37

*Carlson v. Bos. Sci. Corp.*
856 F.3d 320, 325 (4th Cir. 2017)…………………………………………...……………12

*David v. Alphin*
No. 07–cv–11–RJC–DLH, 2009 WL 3633889, at *4 (W.D.N.C. Oct.30, 2009)………………...37

*E.H. v. Valley Christian Academy*
2022 WL 2953681 at *7 (C.D. Cal. July 25, 2022)……………………………………...23, 27

*Fannin v. CSX Transp*., Inc.,
No. 88-8120, 1989 WL 42583, at *5 (4th Cir. Apr. 26, 1989) (unpublished opinion)……….31, 24

*Fannin v. CSX Transp., Inc.*
873 F.2d 1438, 1989 WL 42583, at *5 (4th Cir.1989)……………………………………33,39

*Fernandez v. Bruno Northfleet, Inc.*
2021 WL 4851378 (S.D. Fla. Oct 18, 2021)……………………………………………..27

*Flor v. BOT Fin. Corp. (In re Flor)*
79 F.3d 281, 284 (2d Cir. 1996)…………………………………………………....36, 37

*Fulani v. League of Women Voters Educ. Fund*
684 F. Supp. 1185, 1192 (S.D.N.Y.1988)…………………………………………….24

*Garber v. Office of the Comm'r of Baseball*
120 F. Supp. 3d 334, 337 (S.D.N.Y. 2014) (citation omitted)………………………….....31

*Gebser v. Lago Vista Indep. Sch. Dist.*
524 U.S. 274, 286 (1998) ……………………………………………………………..24

*Goodman v. Archbishop Curley High Sch., Inc.*
195 F. Supp. 3d 767, 774 (D. Md. 2016)…………………………………………….....36

*Grove City Coll. v. Bell*
465 U.S. 555, 564(1984)……………………………………………………15, 25, 38

*Hall v. Greystar Mgmt. Servs.*
*L.P.*, 193 F. Supp. 3d 522, 525 (D. Md. 2016)……………………………………….....31

*HeiTech Servs., Inc. v. Rowe*
GJH-17-1319, 2017 WL 4838750, at *2 (D. Md. Oct. 24, 2017)………………………….31

*Husbands v. Financial Management Solutions, LLC*
No. GJH-20-3618, 2021 WL 4339436, at *8 (D. Md. Sept. 23, 2021)…………………….27

*Joe Doe One, et al., v. CVS Pharmacy, Inc., et al.*
No. 18-cv-01031-EMC, 2022 WL 3139516 (N.D. Cal.) (Aug. 5, 2022)……………………24

*Johnny's Icehouse, Inc. v. Amateur Hockey Ass'n*
134 F. Supp. 2d 965 (N.D. Ill. 2001)……………………………………………...23, 25

*Johnson v. Cent. Collections*
No. ELH-19-2821, 2020 WL 2306452, at *5 (D. Md. May 8, 2020)…………………….31

*Karanik, et al. v. Cape Fear Academy, et al.*
Case No. 7:21-cv-169-D (E.D.N.C. June 17, 2022)………………………………..27

*Keena v. Groupon, Inc.*
886 F.3d 360, 362-63 (4th Cir. 2018); *cf.* 28 U.S.C. § 1292(b)………………………………31

*Kelly v. Johns Hopkins Univ.*
2018 WL 4211296, at \*2 (D. Md. Aug. 13, 2018)…………………………………………26

*Kennedy v. Villa St. Catherine, Inc.*
No. 09-3021, 2010 WL 9009364, at \*2 (D. Md. June 16, 2010)………………………………...36

*Kennedy v. St. Joseph's Ministries, Inc.*
657 F.3d 189, 195 (4th Cir. 2011)……………………………………………………………33

*LaFleur v. Dollar Tree Stores, Inc.*
No. 2:12–CI–00363, 2014 WL 2121721, at \*2 (E.D.Va. May 20, 2014)………………………35

*Lawley v. Northam*
No. ELH-10-1074, 2013 WL 4524288, at \*1 (D. Md. Aug. 23, 2013),,,,……………..………13, 26

*Lizarbe v. Rondon*, No. 07-1809
2009 WL 2487083, at \*3 (D. Md. Aug. 12, 2009)……………………………………………36

*Lynn v. Monarch Recovery Mgmt.*
953 F. Supp. 2d 612, 620 (D. Md. 2013)………………………………………...………12, 33

*McGlotten v. Connally*
338 F. Supp. 448, 461 (D.D.C.1972)………………………………………………...24, 30

*M.H.D. v. Westminster Schools*
172 F.3d 797 (11th Cir.1999)…………………………………………………………15

*Mohawk Indus., Inc. v. Carpenter*
130 S. Ct. 599, 605 (2009)……………………………………………………………32

*Moffett v. Computer Sci. Corp*………………………………………………………...33
No. 05-1547, 2010 WL 348701, at \*2 (D. Md. Jan. 22, 2010)

*Myles v. Laffitte*
881 F.2d 125, 127 (4th Cir. 1989)……………………………………………..13,31

*Nat'l Collegiate Athletic Ass'n v. Smith (multiple pages)*
525 U.S. 459 (1999)………………………………………………………..…15, 17

*NCAA v. Smith*
525 U.S. at 470…………………………………………………………17, 18, 22

*N.J. Dep't of Treas. v. Fuld*
2009 WL 2905432, at *2 (D.N.J. Sept.8, 2009)…………………………………………………39

*North Carolina v. W.R. Peele, Sr. Trust*
889 F.Supp. 849, 852
(E.D.N.C.1995)………………………………………………………………………………30, 37

*North Carolina ex rel. Howes v. W.R. Peele, Sr. Trust*
889 F.Supp. 849, 853 (E.D.N.C.1995)……………………………………………………..35

*Palandjian v. Pahlavi*
782 F.2d 313, 314 (1st Cir. 1986)…………………………………………………………..34

*Potter v. Potter*
199 F.R.D. 550, 553 (D. Md. 2001)…………………………………………………………12

*Randolph v. ADT Sec. Servs., Inc.*
2012 WL 273722, at *6 (D. Md. Jan. 30, 2012)……………………………………………32

*Randolph v. ADT Sec. Servs., Inc.*
No. 09-1790, 2012 WL 273722, at *6 (D. Md. Jan. 30, 2012)…………………………….36

*Regan v. Taxation with Representation*
461 U.S. 520, 550–51 (1983)…………………………………………………15, 16, 25,38

*Springfield Hosp., Inc. v. Guzman*
28 F.4th 403, 409–10 (2d Cir. 2022)…………………………………………………………29

*State of N.C. ex rel. Howes v. W.R. Peele, Sr. Trust*
889 F.Supp. 849, 852 (E.D.N.C.1995)……………………………………………………35, 37

*TFWS, Inc. v. Franchot*
572 F.3d 186, 194 (4th Cir. 2009)………………………………………………………….13

*U.S. Tobacco Coop. Inc. v. Big. S. Wholesale of Va., LLC*
899 F.3d 236, 256-57 (4th Cir. 2018)………………………………………………………12

*United States v. Under Seal*
835 F.3d 706, 716 (4th Cir. 2017)………………………………………………………….30

*United States v. Lawrence*
201 F.3d 536, 537 (4th Cir. 2000)………………………………………………………….30

*Wade v. Corr. Ofc. Christopher Cavins*
No. PWG-17-3693, 2019 WL 2410969……………………………………………………12, 13

*White v. Nix*
43 F.3d 374, 378 (8th Cir. 1994)……………………………………………………...36

*In re Air Cargo, Inc.*, CCB-080587, 2008 WL 2415039, at *3 (D. Md. June 11, 2008)………...31

*In re Swann Ltd. Partnership*, 128 B.R. 138, 140–41 (D.Md.1991)……………………………39

*In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 626 (7th Cir.2010)………………………..34

*Sinclair Broad. Grp. Ec. Litig.*, 473 F. Supp. 3d 529, 535 (D. Md. 2020)………………………12

**STATUTES**:

13 C.F.R. § 113.100……………………………………………………………………...27

13 C.F.R. § 113.105………………………………………………………………………28

26 U.S.C. § 501(c)(3)……………………………………………………………….passim

28 U.S.C. § 1292(b)…………………………………………………………………...13, 31, 37

42 U.S.C. § 18116(a)……………………………………………………………………24

42 U.S.C.A. § 1981 *et seq*………………………………………………………………27

29 U.S.C.A. § 701 ………………………………………………………………………27

34 C.F.R. § 106.2(g)(1) …………………………………………………………………27

Title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.)……………………………..24

Title VI and Section 504 of the Rehabilitation Act……………………………………………...27

Title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.), the Age Discrimination
Act of 1975 (42 U.S.C. 6101 et seq.), or section 794 of title 29…………………………………24

**FEDERAL RULES OF CIVIL PROCEDURE**:

Federal Rule of Civil Procedure 54(b)…………………………………………………...11

Federal Rule of Civil Procedure 59(e)…………………………………………………...12

Federal Rule of Civil Procedure 60(b) …………………………………………….......12

**OTHER AUTHORITIES**:

Rev. Rul. 71-447, 1971-2 CB 230…………………………………………………………………..16

16 CHARLES A. WRIGHT, ET AL., FED. PRAC. & PROC. § 3930, at 157 (1977)…………37

Plaintiffs Donna Buettner-Hartsoe and N.H., a minor, Arianna Gomez, Jenna Pullen, Selena Barber and A.G., a minor, and Andrea Conrad and H.C., a minor ("Plaintiffs") file this Memorandum of Law in Opposition to Defendant Baltimore Lutheran High School Association d/b/a Concordia Preparatory School's ("Defendant CPS") Motion to Reconsider and/or Motion to Certify an Order for Interlocutory Appeal (Docket No. 134) and in support thereof state as follows:

## PRELIMINARY STATEMENT

Before this Court is Defendant CPS's Motion for Reconsideration and/or Motion to Certify an Order for Interlocutory Appeal filed on the heels of this Court's Order denying Defendant CPS's prior Motion to Dismiss and/or Motion for Partial Summary judgment on Plaintiffs' Title IX claim (RDB-20-3132, ECF No. 108; RDB-20-3214, ECF No. 60; RDB-20-3229, ECF No. 75; RDB-20-3267, ECF No. 112; RDB-21-0691, ECF No. 37.). In its Memorandum Order, this Court held that Defendant CPS's tax-exempt status under 26 U.S.C. § 501(c)(3) ("501(c)(3)" constitutes federal financial assistance for the purposes of Title IX (RBD-20-03132, ECF No. 130)).

Defendant CPS now asks for yet another bite at the same apple, arguing for reversal of this Court's Order or for interlocutory appeal on this issue, despite not offering any new information or case law, and without meeting the heavy burden for interlocutory appeal in this Circuit (Docket No. 134). In accordance with this Court's Memorandum Order denying Defendant CPS's prior Motion to Dismiss, Defendant CPS's tax-exempt status under § 501(c)(3) subjects the institution to liability under Title IX and Defendant CPS's Motion for Reconsideration and/or Interlocutory Appeal must be denied.

## LEGAL STANDARD

The bounds of a district court's discretionary review under Federal Rule of Civil Procedure 54(b), which governs motions for reconsideration of orders that do not constitute final judgments

in a case, "[are] not limitless." *Carlson v. Bos. Sci. Corp.,* 856 F.3d 320, 325 (4th Cir. 2017). The Fourth Circuit has not yet articulated a precise standard governing a motion for reconsideration of an interlocutory order: while the standards articulated in Rules 59(e) and 60(b) are not binding in an analysis of Rule 54(b) motions, Courts in this circuit frequently look to these standards for guidance in considering such motions. *See Wade v. Corr. Ofc. Christopher Cavins,* No. PWG-17-3693, 2019 WL 2410969, at *1–2 (D. Md. June 7, 2019). The Fourth Circuit has explained that review under Rule 54(b) is "cabined . . . by treating interlocutory rulings as law of the case." *Carlson* at 325 (citations omitted). Accordingly, a court may revise an interlocutory order under the same circumstances in which it may depart from the law of the case – *i.e.*, (1) different evidence is discovered during the litigation; (2) a change in applicable law; or (3) clear error causing manifest injustice. *Id.*

This discretion is also "subject to the caveat that where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *In re Sinclair Broad. Grp. Ec. Litig.*, 473 F. Supp. 3d 529, 535 (D. Md. 2020) (citing *U.S. Tobacco Coop. Inc. v. Big. S. Wholesale of Va., LLC*, 899 F.3d 236, 256-57 (4th Cir. 2018)). In other words, a reconsideration motion is "not the proper place to relitigate a case after the court has ruled against a party, as mere disagreement with a court's rulings will not support granting such a request." *Id.* (quoting *Lynn v. Monarch Recovery Mgmt.*, 953 F. Supp. 2d 612, 620 (D. Md. 2013)). Were it otherwise, "there would be no conclusion to motions practice, each motion becoming nothing more than the latest installment in a potentially endless serial that would exhaust the resources of the parties and the court." *Potter v. Potter*, 199 F.R.D. 550, 553 (D. Md. 2001).

In evaluating a Rule 54(b) motion for a "clear error of law causing manifest injustice," "'mere disagreement' with a court's ruling is not enough to justify granting a motion for reconsideration." *Wade*, 2019 WL 2410969, at *4 (quoting *Lynn*, 953 F. Supp. 2d at 620). Rather, to justify granting reconsideration on the basis of clear error, "the prior judgment cannot be 'just maybe or probably wrong; it must . . . strike the court as wrong with the force of a five week-old, unrefrigerated dead fish.'" *Id*. (quoting *Fontell*, 891 F. Supp. 2d at 741). Indeed, as the Fourth Circuit has explained it, the prior judgment must be "dead wrong." *Id*. (quoting *TFWS, Inc. v. Franchot*, 572 F.3d 186, 194 (4th Cir. 2009)). Importantly, a "'factually supported and legally justified' decision does not constitute clear error." *Id*. (quoting *Lawley v. Northam*, No. ELH-10-1074, 2013 WL 4524288, at *1 (D. Md. Aug. 23, 2013)).

In the alternative, Defendant CPS seeks a certification for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). The Fourth Circuit has made clear that Section 1292(b) "should be used sparingly and . . . its requirements must be strictly construed." *Myles v. Laffitte*, 881 F.2d 125, 127 (4th Cir. 1989). Certification is only appropriate where an appeal involves a controlling issue of law as to which there is substantial ground for disagreement among the courts and immediate appeal may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b). Defendant CPS fails to meet this strict test.

## ARGUMENT

Defendant CPS presents two arguments for reconsideration and for certification of an interlocutory appeal: First, that the Court erred by concluding that CPS's § 501(c)(3) tax-exempt status is "federal financial assistance" for purposes of Title IX; and second, that the Court's Order involves a controlling question of law, with substantial grounds for difference of opinion, such that interlocutory appeal is warranted. Neither of these arguments warrants reconsideration or

certification for interlocutory appeal because they simply rehash arguments the Court has already carefully considered and rejected. Defendant CPS has presented no new facts or law since its last reply that would alter in any way this Court's prior decision as contained in its June 21, 2022 Order.

### I. This Court should Deny Defendant CPS's Motion for Reconsideration because its § 501(c)(3) Tax Exempt Status Constitutes "Federal Financial Assistance" Under Title IX and as such, no Clear Error was Made

In its Motion for Reconsideration, Defendant CPS argues that this Court's prior Order exhibits "clear error because the Court's decision incorrectly concluded that a tax exemption, authorized and extended under a law administered by the Internal Revenue Service, constitutes federal financial assistance for purposes of Title IX." (Mot. at 2-3.) First, Defendant already argued this in its Reply. Defendant may not like the Court's reception to its argument, but that is not a basis for the relief sought. Second, this argument plainly fails.

The Court correctly analogized the definition of federal financial assistance with antidiscrimination public policy from both Title VI and Title IX. Moreover, the case law and facts establish that Defendant CPS cannot avail itself of the benefits of federal tax exemption but avoid the costs by not adhering to Title IX's mandates. Thus, this Court's Order must be upheld.

### a. It is Well-Established Law that a Tax Exemption under § 501(c)(3) Constitutes Federal Financial Assistance under Title VI and Title IX

#### 1. Supreme Court and Federal Circuit Court Precedent on this Issue is Clear

As this Court made clear in its Memorandum Order, and consistent with Supreme Court precedent on this issue, § 501(c)(3) tax exemption constitutes federal financial assistance for the purposes of Title IX. *See Cannon v. University of Chicago*, 441 U.S. 677, 717 (1979) (Schools with tax-exempt status should be held to the mandates of Title IX "to avoid the use of federal

resources to support discriminatory practices"); *Regan v. Taxation with Representation,* 461 U.S. 520, 550–51 (1983) ("A tax exemption has much the same effect as a cash grant to the organization"); *Grove City Coll. v. Bell,* 465 U.S. 555, 564(1984) ( "[t]here is no basis in the statute for the view that only institutions that themselves apply for federal aid or receive checks directly from the federal government are subject to regulation [under Title IX]"); *Nat'l Collegiate Athletic Ass'n v. Smith*, 525 U.S. 459, 461 (1999) ("[E]ntities that receive federal assistance, whether directly or through an intermediary, are recipients within the meaning of Title IX"). On this basis alone, the Court should deny Defendant CPS's Motion.

Other Circuit courts have reached this same conclusion, as illustrated in the Eleventh Circuit decision in *M.H.D. v. Westminster Schools*, 172 F.3d 797 (11th Cir.1999). In *Westminster,* the Georgia district court found that a private high school's tax-exempt status constituted federal financial assistance to render it subject to Title IX. *Id.* The facts presented by Defendant CPS are the same as those presented in *Westminster*: that this tax-exempt status was the sole form of federal financial assistance the defendant school received. *Id.* at 801. The *Westminster* court found that "exemption from federal taxes produces the same result as a direct federal grant— Westminster possesses funds that otherwise would belong to the Government." *Id.* at fn 12. Thus, the Court found in agreement with the plaintiff's argument that it logically follows that "a direct grant and a tax exemption should be treated the same; because a grant constitutes 'Federal financial assistance' under Title IX, tax-exempt status also should satisfy this element of the statute." *Id.*

Tellingly, Defendant CPS does not cite to a single Supreme Court or Circuit court case to support their argument that tax-exempt status does not constitute "federal financial assistance" under Title IX. Indeed, it is well-settled that § 501(c)(3) status confers upon the beneficiary of said status the mandates and requirements of Title IX and other spending clause statutes. This is of

course true in other contexts. *See, e.g., Cannon*, 441 U.S. at 704 (tax exemptions are a form of subsidy and the equivalent of a cash grant in Title VI context); *Regan,* 461 U.S. T 550-551 (1983) (Recognizing, in first amendment context, that § 501(c)(3) is a form of Congressional subsidy and the equivalent of a cash grant.).  As such, this Court must deny Defendant CPS's Motion.

### 2. Defendant CPS's Argument that a § 501(c)(3) Tax-Exemption is Not the Type of "Government Assistance" or Economic Benefit Contemplated by Title IX Plainly Fails

Defendant CPS argues that a § 501(c)(3) tax exemption is not a government benefit authorized or extended under a law administered by the Department of Education, and that because it is authorized or extended under a law administered by the IRS, it is not "federal financial assistance" for purposes of Title IX. (Mot. at 7.) Defendant CPS's reliance on *Bob Jones University v. United States,* 461 U.S. 574 (1983) in support of this position is misguided.

The Court in *Bob Jones* held that racially discriminatory private schools could not qualify for recognition of tax-exempt status as organizations described in § 501(c)(3). *Id.* In so holding, the Court affirmed the interpretation of § 501(c)(3) announced in 1970 and again in 1971 in Rev. Rul. 71-447, 1971-2 CB 230. The Court held that such schools violate a fundamental public policy and cannot be viewed as conferring a public benefit within the meaning of common-law standards of charity and the Congressional intent underlying § 501(c)(3). *Bob Jones*, 461 U.S. at 595, 596.

Defendant CPS argues that because the *Bob Jones* court "never addressed the impact of the tax exemption under Title IX or other spending clause legislation", this Court's ruling "equating the analysis of that issue with whether sex discrimination is unlawful or against public policy was clear error by the Court." (Mot. at 16-17.) This argument misses the point of the *Bob Jones* decision and its relevance to the issues raised in Defendant CPS's Motions.

The Court in *Bob Jones* made clear that if a private school qualifies for tax-exempt status under § 501(c)(3), it has implicitly adopted a policy of nondiscrimination as to its students. *Id.* at 579. The Court reasoned that Congress could constitutionally force private schools like Bob Jones University to make the choice between receipt of tax benefits and following religious beliefs. *Id.* at 604. The Court did not require – or even consider – whether Bob Jones University received any other type of financial aid from the government, which Defendant CPS argues is necessary to trigger the mandates of anti-discrimination statutes, such as "a cash grant or loan, a grant of property, receipt of federal services, etc." (Mot. at 7). To wit, by holding the university to the express tenets of the antidiscrimination statutes *simply because the school availed itself of § 501(c)(3) tax-exempt status*, the *Bob Jones* court found that tax-exempt status granted by the IRS is a form of "federal financial assistance" sufficient for purposes of requiring compliance with nondiscrimination law. *Id.* at 574-575. The Court simply called out the hypocrisy of schools like Bob Jones University wanting to have it both ways.

Similarly, Defendant CPS's reliance on *Nat'l Collegiate Athletic Ass'n v. Smith*, 525 U.S. 459 (1999) in support of its argument that its tax-exempt status is solely economic in nature, and therefore insufficient federal assistance for purposes of Title IX liability, is misplaced. In *NCAA v. Smith,* the Supreme Court held that "dues payments from recipients of federal funds" do not "suffice to subject [an entity] to suit under Title IX." 525 U.S. at 470. In so holding, the Court reasoned that "[e]ntities that receive federal assistance, whether directly or through an intermediary, are recipients within the meaning of Title IX; entities that only benefit economically from federal assistance are not." *Id*. at 468. Defendant CPS argues that its tax-exemption is purely economic in nature and that it does not use its § 501(c)(3) status for any other purpose (Mot. at 9-10). Defendant CPS argues that this kind of economic benefit is substantially dissimilar from the

kind of financial assistance contemplated under Title IX, which consists of monies given to schools from the federal government for spending on educational practices and student scholarships, among other endeavors. (Mot. at 6, 9-11.) This application of *NCAA v. Smith* misses the mark.

Unlike in *NCAA v. Smith*, Defendant CPS uses its tax-exempt status as both a shield and a sword. Put more directly, it is simply untrue that Defendant CPS receives *only an economic break from the IRS* when it avails itself of tax-exempt status, and that Defendant CPS receives no other benefit ancillary to this status. (*See* Mot. at 9-10.) On the contrary, Defendant CPS actively uses its non-profit, tax-exempt status for benefits beyond economic breaks from the IRS, including to attract and solicit donations from private entities, such as alumni, for direct use for its educational programs and auxiliary services (such as classrooms, sports fields, and the like). An example: Defendant CPS's "Renew and Rejoice" institutional advancement campaign expressly calls for tax-deductible donations that would fund endeavors like renovated sports facilities and improved performing arts and classroom spaces. Defendant CPS's own development webpage makes clear this special benefit, as the first of its "Frequently Asked Questions"[1]:

> **Q: Is my gift tax deductible?**
> A: Yes
>
> **Q: Can I designate my gift?**
> A: Yes. You may designate your gift for the Capital Campaign or the Annual Fund. Our greatest need is for unrestricted gifts, but you may direct your gift to any area encompassed by the Capital Campaign or the Annual Fund.

In addition, Defendant CPS's "Planned Giving" site[2] extols the many ways in which donors can enjoy tax deductions in exchange for their gifts and donations to Concordia Preparatory

---

[1] Concordia Preparatory School: Ways to Give, (August 15, 2022), https://concordiaprepschool.org/development/ways-to-give/
[2] Concordia Preparatory School: Planned Giving, (August 15, 2022), https://concordiaprepschool.org/development/planned-giving/

School: the site explains how planned gifts such as bequests in wills, life income plans, charitable gift annuities, charitable remainder trusts, retained life estates, charitable lead trusts, and life insurance policies can confer upon the donor a "deductible for federal estate tax purposes". To wit, this webpage contains detailed tax deduction information for each and every category of planned giving listed. Clearly, Defendant CPS wants its potential donors to know that the school's tax-exempt status under § 501(c)(3) carries a benefit to their tax bill as well. This in turn also attracts talent to the school - people not only donate, but they volunteer their time, join boards, coach, and otherwise support the school and its mission all because it is a "nonprofit" organization, a § 501(c)(3) organization. Indeed, some individuals and groups will *only* work with nonprofit groups.

Other examples of this type of solicitation and the ways in which Defendant CPS uses and benefits from these tax-deductible donations include:

- In the November 2018 issue of "Crossroads"[3], a newsletter sent to alumni and friends of Concordia Preparatory School, CPS Headmaster Brent Johnson informs readers that "We began the day with our Fall Open House for Prospective families--attendance was outstanding. At noon, we welcomed many alumni to campus for a dedication ceremony for the renovated areas that are part of Phase One of the 'Renew and Rejoice' campaign." Johnson similarly encourages readers to attend and donate to an upcoming CPS theater production, noting that a portion of funds raised would go toward the "Renew and Rejoice" campaign and the renovation of the CPS Black Box Theatre. Again, CPS is going beyond the economic benefit conferred by the IRS.

- In the December 2018 issue of "Crossroads"[4], Johnson reminds readers to donate to the Annual Fund Campaign, stating that "Gifts to the Annual Fund provide immediate assistance to the school's operating budget and provides financial aid to our students." Again, in addition to the economic benefits beyond the IRS, CPS derives a substantial benefit – being able to attract students CPS and to build its image and prestige through its sports program and otherwise. CPS often touts its

---

[3] Concordia Preparatory School: Crossroads November 2018, (August 15, 2022), https://myemail.constantcontact.com/Concordia-Prep-Crossroads.html?soid=1128530034465&aid=jfRR_NtbOz8

[4] Concordia Preparatory School: Crossroads December 2018, (August 15, 2022), https://myemail.constantcontact.com/Concordia-Prep-Crossroads.html?soid=1128530034465&aid=NsrPadqd5lc

students' successes to attract teachers and students in its marketing materials like newsletters and its admissions websites.[5]

- In the March 2019 issue of "Crossroads"[6], Johnson again calls for donations to the "Renew and Rejoice" campaign, informing donors that "phase one is complete! Both the Upper School and Middle School bathrooms have been renovated. The Upper School chemistry lab and Middle School science room were both renovated and refurbished. The cafeteria renovations are almost complete. Please stop by to witness the transformations on our campus and learn more about what is to come. Phase Two of the campaign is in full swing. Next up is the renovations to the Black Box Theatre, parking lot, and turf field. These updates will take place this summer. We are still in need of funding for these projects. A video that outlines the Black Box Theatre campaign is included below. Please consider making a donation." Here again, CPS is using this benefit to grow and build its community, inviting people to the campus to connect.

- In the Summer 2019 issue of "Crossroads"[7], Johnson provides further update on the status of the "Renew and Rejoice" fundraising campaign, reminding potential donors: "If you have not had an opportunity to donate to the campaign or have donated but would like to support the final phase, please contact me or Director of Advancement, Mrs. Gloria Murphy. We need one last push to make it to the finish line." In that same mailer, Defendant CPS uses "non-profit US postage" designations directly above its promotion of fall Homecoming events. Again, CPS is building its community and supporting attendance at events, which enhances the school's reputation, the students' and faculty's experience, and which in turn it also used for retention and marketing purposes.

- In the September 2019 issue of "Crossroads"[8], Johnson lays out the third phase of the "Renew and Rejoice" campaign: "Over the summer months, we continued to improve the campus through the Renew and Rejoice campaign. The turf field was replaced and the entire Saints Athletic Field area received a makeover. The Press Box was renovated, a new sound system was installed, landscaping, fences, and

---

[5] Concordia Preparatory School: Concordia Prep Fast Facts, (August 15, 2022), https://concordiaprepschool.org/admissions/concordia-prep-fast-facts/; Concordia Preparatory School: Testimonials, (August 15, 2022), https://concordiaprepschool.org/admissions/testimonials/
[6] Concordia Preparatory School: Crossroads March 2019, (August 15, 2022), https://myemail.constantcontact.com/Concordia-Prep-Crossroads.html?soid=1128530034465&aid=r0RmqPOA-EI
[7] Concordia Preparatory School: Crossroads Summer 2019, (August 15, 2022), https://concordiaprepschool.org/wp-content/uploads/2019/08/CPS-Crossroads-Summer-2019.pdf

[8]Concordia Preparatory School: Crossroads September 2019, (August 15, 2022), https://myemail.constantcontact.com/Concordia-Prep-Crossroads.html?soid=1128530034465&aid=VSRsAt82BAc

walkways were all improved. We are in the process of finishing the renovations to the Giguere room—formerly the STAR suite with new furniture and a dedicated testing area. The Black Box Theater renovation is now scheduled to be completed in time for the fall Theatre Department production of Secondary Cause of Murder, November 1-3. The final phase of the Renew and Rejoice campaign is kicking off this fall with renovations to the LAC including new locker rooms, bathrooms, and sound system. We still need your support to finish this project. Please contact Director of Advancement, Mrs. Gloria Murphy or myself to learn how you get involved." Again, Johnson asks for donations after spelling out how the tax-deductible donations will be used. CPS is also benefiting from its enhanced offerings, attendee/participant experience, and reputation.

- In the March 2021 issue of "Crossroads"[9], Johnson invites alumni and friends of CPS to attend a "a Virtual Bid for Kids Gala. This is our biggest fundraiser of the year and we need your support. The special appeal this year will raise money to finish the Renew and Rejoice cafeteria project and enable CPS to begin a hot lunch program." Here we see more of the same – vast benefits that extend far beyond the mere acceptance of tax-exempt status and include non-economic benefits.

Additionally, Defendant CPS offers alumni and friends the chance to personally engrave a brick outside of the school in exchange for a tax-deductible donation through it's "Brick Engraving Program"[10].

Further, Defendant CPS enjoys a litany of benefits inherent to its status as a § 501(c)(3) tax-exempt entity that go far beyond a simple tax break. Like many § 501(c)(3) entities, Defendant CPS enjoys a number of benefits because of its tax-exempt status, including:

- Exemption from Federal income tax;

- Tax-deductible contributions;

- Possible exemption from state income, sales, and employment taxes;

- Reduced postal rates;

---

[9] Concordia Preparatory School: Crossroads March 2021, (August 15, 2022), https://myemail.constantcontact.com/Concordia-Prep-Crossroads.html?soid=1128530034465&aid=iJxwAoWHcuM
[10] Concordia Preparatory School: Brick Engraving Program Order Form, (August 15, 2022), https://concordiaprepschool.org/wp-content/uploads/2018/04/renewandrejoice-brickcampaign.pdf

- Exemption from Federal unemployment tax; and

- Tax-exempt financing[11].

Other benefits of § 501(c)(3) status include the credibility afforded non-profit organizations to the public and other entities; limited liability protection for directors and founders against personal liability for the activities of the nonprofit; the ability to offer donors tax deductions when they make charitable gifts to the organization; and eligibility for grants on federal, state, and local levels, as many funders require § 501(c)(3) status as a requirement to apply for a grant.[12] Additionally, CPS is able to attract students, faculty, and staff by virtue of having this status, and in this case, CPS did so as a matter of course. CPS is able to enhance its on-campus experience, bring in talented people to attend or work at the school, and to improve its reputation.

In sum, Defendant CPS is not merely the recipient of an economic benefit when it avails itself of § 501(c)(3) tax-exemption with the IRS; it uses this status as a means to attract and obtain donations and funding, to attract people to its community, and to enhance the experience of its community, which it uses for the express purpose of providing educational opportunities and improving the school's facilities. This is wholly inapposite to the economic situation laid out in *NCAA v. Smith.* To wit, Defendant CPS's argument that it is "illogical and unreasonable" to subject CPS to Title IX implications because it is a tax-exempt entity, one that does not receive "transfers of federal money, property or services from the federal government" is unavailing. (Mot. at 14.)

---

[11] *See* IRS Course: Tax Basics for Tax-Exempt Organizations, (August 15, 2022), www.501c3.org

[12] *See* IRS Charitable Organization Exemption Requirements, (August 15, 2022), https://www.irs.gov/charities-non-profits/charitable-organizations/exemption-requirements-501c3-organizations; Primary benefits of a 501c3 corporation, (August 15, 2022), https://www.nonprofitlegalcenter.com/non-profit-resources/primary-benefits-501c3-corporation/

Put simply, Defendant CPS receives a § 501(c)(3) tax-exemption, which the Supreme Court has held constitutes "federal financial assistance" for purposes of Title VI and Title IX mandates. It is simply untrue in fact and contrary to established precedent for Defendant CPS to argue that because it does not cash a check written by the federal government it is somehow not in receipt of federal financial assistance. This Court's prior Order on this issue is soundly decided.

### 3.  Imposing the Mandates of Title IX on Tax-Exempt Schools is Consistent with the Objectives of Title IX and Other Anti-Discrimination Statutes

Indeed, imposing the requirements of Title IX in schools with § 501(c)(3) status is congruent with the principal objectives of Title IX: "to avoid the use of federal resources to support discriminatory practices" and "to provide individual citizens effective protection against those practices." *Cannon*, 441 U.S. at 704. This reasoning is consistent with a holding reached in the Central District of California on July 25, 2022, mere days after the Court entered its Memorandum Order. In *E.H. v. Valley Christian Academy*, 2022 WL 2953681 at *7 (C.D. Cal. July 25, 2022), the district court considered and rejected the defendant school's arguments that, under *Johnny's Icehouse* and similar arguments posited by Defendant CPS, it could not be deemed to have received federal financial assistance for purposes of Title IX simply because of its status as a tax-exempt entity. *Id.* The district court held that the school's tax-exempt status confers a federal financial benefit that obligates compliance with Title IX. *Id.* at *7.

Categorizing tax-exempt status as a form of "federal financial assistance" covered by Title IX is consistent with how tax-exemption is treated in other avenues, including other anti-discrimination statutory constructs such as Title VI of Civil Rights Act of 1964, 42 U.S.C. 2000d *et seq.* ("Title VI"), to which Title IX was closely modeled. *See Cannon*., 441 U.S. at 694-95 ("Title IX was patterned after Title VI... Except for the substitution of the word 'sex' in Title IX

to replace the words 'race, color, or national origin' in Title VI, the two statutes use identical language to describe the benefited class."); *McGlotten v. Connally*, 338 F. Supp. 448, 461 (D.D.C.1972) (holding that "assistance provided through the tax system is within the scope of Title VI"); *Fulani v. League of Women Voters Educ. Fund*, 684 F. Supp. 1185, 1192 (S.D.N.Y.1988) (noting that an entity was subject to Title VI and Title IX because it "receive[d] federal assistance indirectly through its tax exemption"); *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286 (1998) (Title IX and Title VI "operate in the same manner").

In *Joe Doe One, et al., v. CVS Pharmacy, Inc., et al.,* No. 18-cv-01031-EMC, 2022 WL 3139516 (N.D. Cal.) (Aug. 5, 2022), a district court decision reached just weeks after the entry of this Court's Memorandum Order, the Court discussed the mandates of Section 1557 (the nondiscrimination provision of the Affordable Care Act (ACA)), which states that "[a]n individual shall not, on the ground prohibited under Title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.), Title IX of the Education Amendments of 1972 ( 20 U.S.C. 1681 et seq.), the Age Discrimination Act of 1975 (42 U.S.C. 6101 et seq.), or section 794 of title 29, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving federal financial assistance." *Id.* at *1 (citing 42 U.S.C. § 18116(a)). In its discussion of whether the defendant pharmacy was in fact a recipient of federal financial assistance, the *Doe* court denied defendant's motion to dismiss, holding that an entity is deemed to have received federal funding where the entity receives "credits, subsidies, or contracts of insurance" from the federal government, consistent with "the federal funding cases under the Rehabilitation Act and Title IX". *Id.* at *12.  Surely, a tax break is a form of a "credit" from the federal government. And moreover, unlike other § 501(c)(3) tax-exempt entities, Defendant CPS goes beyond merely accepting a tax break and proactively uses its status as a tax-

exempt entity as a direct marketing and fundraising tool for its institutional advancement endeavors.

Here, consistent with the rulings in the analogous cases involving other spending clause statutes, this Court properly held that Defendant CPS's receipt of a § 501(c)(3) tax exemption is precisely the kind of credit or subsidy from the government sufficient to trigger Title IX implications. Accordingly, Defendant CPS's Motion for Reconsider on this issue must be denied.

### b. The Court Already Considered Defendant CPS's Argument – and the Case Law it Cites in Support - that its Tax-Exempt Status is Insufficient to Trigger Title IX's Mandates

In its Motion to Dismiss and supporting Memorandum of Law, Defendant CPS cites to *Johnny's Icehouse, Inc. v. Amateur Hockey Ass'n*, 134 F. Supp. 2d 965 (N.D. Ill. 2001) in support of the contention that because income tax exemptions are absent" from the "laundry list" of financial assistance that the district court held were sufficient to trigger Title IX liability. (Mot. At 11-12.) Defendant CPS raises the exact same arguments, with reliance on *Johnny's Icehouse,* in the instant motion; Defendant CPS offers no new fact or law in support of its position. (Mot. at 11, 25.) This is now the second time Defendant CPS has brought this case to the attention of the Court, only for the Court to reject it as controlling law.

This Court outright rejected Defendant CPS's argument and said that its reliance on the district court's opinion in *Johnny's Icehouse* in its Memorandum Order was unavailing, stating that "[i]n light of the Supreme Court's holdings in *Regan, Grove City College, Smith*, and *Cannon*, as discussed supra, this Court holds that § 501(c)(3) tax exemption constitutes federal financial assistance for the purposes of Title IX." (Mem. Order at 12.) Despite this, Defendant CPS reargues the very principles espoused in the *Johnny's Icehouse* decision, offering this argument for the second time as if it were freshly brought before this Court. (Mot. at 11, 25.) Defendant CPS offers

no District of Maryland or Fourth Circuit law, in its initial Motion to Dismiss or in the pending Motion for Reconsideration, to support its position.

The instant Motion is therefore little more than an attempt for a third bite at the apple despite this Court having ruled, multiple times now, against Defendant CPS's motions for judgment on the pleadings and motions to dismiss Plaintiffs' Title IX claims.

### c. Defendant CPS's Disagreement with this Court's Careful Consideration of Title IX Implications for a Tax-Exempt, Private School like CPS Does Not Warrant Reconsideration of a Court Order

Defendant CPS asks the Court to reconsider its prior ruling concerning Plaintiffs' assertion that Defendant CPS's tax-exempt status is federal financial aid under Title IX. (Mot. at 30.) But Defendant CPS does not (and cannot) argue that the Court failed to consider controlling law, or that in the weeks since the Order was entered, new law has come to light that would materially alter the Court's reasoning in Defendant CPS's favor (and instead, tellingly, it is Plaintiffs who have additional, persuasive authority from the period in between the entry of this Court's Memorandum Order and the filing of Defendant CPS's Motion that further supports Plaintiffs' positions). Rather, Defendant CPS simply disagrees with the outcome of the Court's application the law to the facts. Once again, a disagreement with the Court's analysis does not trigger reconsideration. *See Kelly v. Johns Hopkins Univ.*, 2018 WL 4211296, at *2 (D. Md. Aug. 13, 2018) ("[A] factually supported and legally justified decision does not constitute clear error.") (quoting *Lawley v. Northam*, 2013 WL 4524288, at *1 (D. Md. Aug. 23, 2013)). There is no error afoot here, only Defendant CPS's dissatisfaction at having lost on this issue multiple times.

### d. Defendant CPS's Receipt of Paycheck Protection Program (PPP) Loans Triggered Title IX Mandates During the Timeframe Relevant to H.C.'s Claims

District courts have held that Paycheck Protection Program (PPP) loans administered by the Small Business Association (SBA) of the federal government constitute federal financial

assistance under anti-discrimination statutes Title VI and Section 504 of the Rehabilitation Act as well as Title IX. *See* 42 U.S.C.A. § 1981 *et seq*.; 29 U.S.C.A. § 701 *et seq. See, e.g., Karanik, et al. v. Cape Fear Academy, et al*., Case No. 7:21-cv-169-D (E.D.N.C. June 17, 2022), in which a district court in North Carolina held that "[a] PPP loan is 'federal financial assistance' subject to Title IX because it is '[a] grant or loan of Federal financial assistance.'" *Id*. (citing 34 C.F.R. § 106.2(g)(1); *E.H. v. Valley Christian Academy*, 2022 WL 2953681 at *7 (C.D. Cal. July 25, 2022)(holding that school's receipt of a PPP loan constituted receipt of federal financial assistance for purposes of Title IX implications).

This is consistent with holdings reached in other cases involving anti-discrimination statutes and the receipt of PPP loans. *See Awah v. Mansfield Kaseman Health Clinic,* 2021 WL 6197415 (D. Md. Dec. 30, 2021) (denying motion to dismiss Title VI claims against entity Defendant that received PPP loan); *Fernandez v. Bruno Northfleet, Inc.,* 2021 WL 4851378 (S.D. Fla. Oct 18, 2021) ("Any doubts as to whether the federal funding Defendant received qualifies as 'federal financial assistance' for purposes of Rehabilitation Act coverage are better addressed after discovery… At the Motion to Dismiss stage, however, Plaintiff has sufficiently alleged facts to support its Rehabilitation Act claim"); *Husbands v. Financial Management Solutions, LLC,* No. GJH-20-3618, 2021 WL 4339436, at *8 (D. Md. Sept. 23, 2021) (finding allegations that a defendant was the recipient of federal financial assistance sufficient to state a claim for relief under the Rehabilitation Act despite defendant's urging that it only received funds in the form of PPP loans disbursed under the CARES Act). It is similarly undisputed that the SBA itself has incorporated Title IX into its Regulations. *See* 13 C.F.R. § 113.100. Similarly, Defendant CPS is certainly an "Education institution" under those same SBA Regulations. 13 C.F.R. § 113.105 ("a

preschool, a private elementary or secondary school . . . ."). The SBA Regulations adopting Title IX made clear that any "loan of financial assistance" constitutes "Federal financial assistance." *Id*.

In the context of its own receipt of a PPP loan, Defendant CPS argues that there is "strong evidence" that Federal agencies do not view § 501(c)(3) status as the equivalent of federal financial assistance. (Mot. at 13.) In support of this argument, Defendant CPS cites to "Frequently Asked Questions Regarding Participation of Faith-Based Organizations in The Paycheck Protection Program (PPP) and The Economic Injury Disaster Loan Program (EIDL)," which state in part that once a PPP loan is paid off or forgiven, the recipient's nondiscrimination obligations cease. *Id*. This argument defies logic: the specific "Frequently Asked Questions" cited by Defendant CPS make absolutely no reference to tax-exempt status as being connected to the receipt of the loan, nor is a PPP loan in any way connected with § 501(c)(3) tax-exemption. To wit: an entity could have received a PPP loan without being a tax-exempt entity; one has nothing to do with the other.

Defendant CPS attempts to conflate the two issues – PPP loan forgiveness and § 501(c)(3) tax exemption – in an effort to convince the Court that its obligation to comply with nondiscrimination statutes, including Title IX, ceased at the time that its PPP loan was forgiven regardless of its status as a tax-exempt entity. (Mot. at 13-14.) (This does not comport with the factual record, as articulated in this Court's Memorandum Order, which found that Plaintiff H.C., who was a student at CPS through at least Spring 2020, was enrolled during the timeframe in which CPS was the recipient of a PPP loan; Defendant CPS's obligations to H.C. under Title IX are not impacted by the fact that Defendant CPS repaid its loan (Order at 12-13)). The express language of this "Frequently Asked Question" is overly broad and provides no mechanism or description delineating what precise obligations are extinguished and what remains enforceable. For example, as Defendant CPS readily admits, compliance with Federal nondiscrimination

statutes is clearly not excused just because a PPP loan has been forgiven. (Mot. at 13.) Despite Defendant CPS's contention that it would be "superfluous and irrelevant if…faith-based organizations were already required to comply with those nondiscrimination obligations due to their § 501(c)(3) tax status", Courts are not so quick to let borrowers off the proverbial hook merely because they repaid their debts to the federal government. *See, e.g., Springfield Hosp., Inc. v. Guzman* 28 F.4th 403, 409–10 (2d Cir. 2022)(holding that "the mere existence of a forgiveness option does not turn the PPP into a grant of free money").

Further, as the Court pointed out in its Memorandum Order, Defendant CPS's PPP loan was forgiven in November 2020, months after the sexual assault of H.C. took place. (Mem. Order at 12-13.) There are simply no facts in evidence to support Defendant CPS's contention that it did not receive federal financial assistance in the form of a PPP loan in the timeframe relevant to H.C.'s claims. *Id.* Defendant CPS's argument as to its PPP loan forgiveness is unavailing and should be disregarded.

### e. This Court Needn't Make a Sweeping Declaration with Respect to ALL § 501(c)(3) Tax-Exempt Entities

Defendant CPS makes much out of the idea that the Court's Memorandum Order has the potential to disrupt the status quo for all private K-12 institutions in the jurisdictional reach of this Court and this Circuit. (Mot. at 23-24.) There is no need for such an alarmist response. Even if this Court is disinclined to uphold a ruling that states that *all* entities enjoying the benefits of § 501(c)(3) tax-exemption are deemed to be in receipt of "federal financial assistance" for purposes of Title IX (or other spending clause statutes), it can easily distinguish between § 501(c)(3) entities that solely enjoy the tax break inherent to their non-profit status and entities like Defendant CPS, who use their tax-exempt status as a means to self-promote, advertise, and fundraise, as discussed earlier in this Memorandum.

Defendant CPS has clearly benefitted from its tax-exempt status and uses this status as a proactive means to solicit and obtain outside sources of funding. Where "the plain purpose" of Title IX "is clearly to eliminate discrimination in programs or activities benefitting from federal financial assistance", "[d]istinctions as to the method of distribution of federal funds" or their "equivalent seems beside the point". *McGlotten*, 338 F. Supp. at 461. Defendant CPS's words inside the courtroom – that its tax-exempt status is purely an economic benefit – do not match up with the facts as proven by their own website. (Mot. at 9.) Unlike other nonprofit, tax-exempt entities, Defendant CPS is unique in that it uses its tax-exemption as a tool for its own gain, far beyond the mere acceptance of a tax break. This distinction is an important one, and allows this Court to avoid a broad, sweeping ruling that applies to all tax-exempt entities.

## II. This Court should Deny Defendant CPS's Motion for Interlocutory Appeal where CPS Failed to Meet the Applicable Standard because the Issue at Hand is Not a Controlling Question of Law to Which there is a Substantial Ground for Difference of Opinion, Nor would an Appeal Materially Advance the Termination of the Instant Litigation

This Court should not certify its ruling for interlocutory appeal because Defendant CPS also fails to meet its burden to justify a departure from the longstanding rule against this extraordinary relief. "Section 1292(b) [which provides] a narrow exception to the longstanding rule against piecemeal appeals, is limited to exceptional cases." *Beck v. Commc'ns Workers of Am.*, 468 F. Supp. 93, 95- 96 (D. Md. 1979). Tellingly, interlocutory appeals are generally disfavored in the Fourth Circuit. *United States v. Under Seal*, 835 F.3d 706, 716 (4th Cir. 2017) (quoting *United States v. Lawrence*, 201 F.3d 536, 537 (4th Cir. 2000)).

The procedural requirements of § 1292(b) are to be strictly construed and applied. *Myles v. Laffitte*, 881 F.2d 125, 127 (4th Cir.1989). To determine whether an order should be certified for interlocutory appeal, courts apply the multi-part test established by the language of § 1292(b).

First, courts must determine whether there is a "controlling question of law as to which there is a substantial ground for difference of opinion." *North Carolina v. W.R. Peele, Sr. Trust,* 889 F.Supp. 849, 852 (E.D.N.C.1995) (holding that "the interlocutory appeal mechanism was not intended to be used in ordinary suits and was not designed "to provide early review of difficult rulings in hard cases"). Next, courts must inquire as to whether an interlocutory appeal would "materially advance the ultimate termination of the litigation." *Id*; *see also Johnson v. Cent. Collections*, No. ELH-19-2821, 2020 WL 2306452, at *5 (D. Md. May 8, 2020) (quoting *HeiTech Servs., Inc. v. Rowe,* GJH-17-1319, 2017 WL 4838750, at *2 (D. Md. Oct. 24, 2017)); *Keena v. Groupon, Inc*., 886 F.3d 360, 362-63 (4th Cir. 2018); *cf.* 28 U.S.C. § 1292(b) (same elements required for leave to file interlocutory appeal of district court order).

Each and every factor must be met before leave shall be granted. *Johnson*, 2020 WL 2306452, at *2 (citing *In re Air Cargo, Inc*., CCB-080587, 2008 WL 2415039, at *3 (D. Md. June 11, 2008)). While all three elements must be present for the district court to grant certification, *Butler v. DirectSAT USA, LLC*, 307 F.R.D. 445, 452 (D. Md. 2015), "'even when the elements of Section 1292(b) are satisfied, the district court retains "unfettered discretion" to deny certification,'" *Garber v. Office of the Comm'r of Baseball*, 120 F. Supp. 3d 334, 337 (S.D.N.Y. 2014) (citation omitted); *accord Hall v. Greystar Mgmt. Servs., L.P*., 193 F. Supp. 3d 522, 525 (D. Md. 2016). In essence, interlocutory review should be reserved for "a narrow question of pure law whose resolution will be completely dispositive of the litigation." *Fannin v. CSX Transp*., Inc., No. 88-8120, 1989 WL 42583, at *5 (4th Cir. Apr. 26, 1989) (unpublished opinion).

Indeed, section 1292(b) is not a fast-forward button for impatient parties, to be pressed when all else fails. Defendant CPS will have ample opportunity to appeal adverse rulings on the merits in due course, and as of right, at the end of the case. *See Mohawk Indus., Inc. v. Carpenter*,

130 S. Ct. 599, 605 (2009) (emphasizing the "general rule that a party is entitled to a single appeal, to be deferred until final judgment has been entered") (internal quotation marks omitted). For reasons stated below, the factors required for interlocutory appeal are not met here, and Defendant CPS's Motion should accordingly be denied.

### a. Defendant CPS's Disagreement with the Court's Ruling Provides No Basis for Certification of an Extraordinary Interlocutory Appeal

Defendant CPS's disagreement with this Court's ruling is inadequate to establish that the Court's order involves a "controlling question of law as to which there is a substantial ground for difference of opinion." *Id.* "The mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion." *Lynn,* 953 F. Supp. 2d at 624 (D. Md. 2013). For if mere disagreement were sufficient, "every contested decision would be appropriate for immediate interlocutory appeal," which would make this extraordinary relief the norm rather than the exception. *Id.* at 626. Instead, "[a]n issue presents a substantial ground for difference of opinion if courts, as opposed to parties, disagree on a controlling legal issue." *Id.* at 624 (quoting *Randolph v. ADT Sec. Servs., Inc.,* 2012 WL 273722, at *6 (D. Md. Jan. 30, 2012)).

Here, Defendant CPS identifies no disagreement among Fourth Circuit or District of Maryland courts – let alone any *substantial* disagreement – warranting this unusual remedy. It is also noteworthy that in its Motion, Defendant CPS states multiple times that the Court got this issue flatly wrong (Mot. at 4, 6). Yet, the relief they seek – an interlocutory appeal – requires that the issue be one where "a substantial ground for difference of opinion exists". (See *Lynn*, supra). This begs the question to Defendant CPS: which one is it? It seems that Defendant CPS is unwilling to "pick a lane": either the issue is so straightforward that the Court's error is plainly obvious, or its one where differing opinions can and do exist such that appeal to the Fourth Circuit is

appropriate. Defendant CPS seems to try and argue both points, which is both illogical and insufficient to warrant the relief it seeks in this particular context.

### 1.  The Court's Order Contains No Controlling Question of Law Regarding Whether Title IX Applies to § 501(c)(3) Entities

A "controlling question of law" is an issue that would, decided differently, terminate, or substantially alter the suit. *See, e.g., Kennedy v. St. Joseph's Ministries, Inc*., 657 F.3d 189, 195 (4th Cir. 2011) (issue is a controlling question where the appellate court's "resolution of it terminates the case"); *Moffett v. Computer Sci. Corp*., No. 05-1547, 2010 WL 348701, at *2 (D. Md. Jan. 22, 2010)("[C]ontrolling questions . . . determine whether there should be any future proceedings at all with respect to Plaintiffs' claims."). For purposes of the § 1292(b) analysis, a "controlling question of law" is a question directed to the "meaning of a statutory or constitutional provision, regulation, or common law doctrine," as opposed to a question heavily freighted with the need for factual assessment. *Id*. at 452 (quoting *Lynn v. Monarch Recovery Mgmt., Inc*., 953 F.Supp.2d 612, 623 (D.Md.2013)); cf. *Fannin v. CSX Transp., Inc*., 873 F.2d 1438, 1989 WL 42583, at *5 (4th Cir.1989) (unpublished table decision) ("Certainly the kind of question best adapted to discretionary interlocutory review is a narrow question of pure law whose resolution will be *completely dispositive of the litigation*, either as a legal or practical matter, whichever way it goes.")(emphasis added)).

The question of whether a § 501(c)(3) exempt entity has received federal financial assistance by virtue of its tax break for purposes of imputing Title IX requirements is not a "controlling question of law" within the meaning of section 1292(b). As this Court has explained, "the kind of question best adapted to discretionary interlocutory review is a narrow question of *pure law*". *Fannin*, 1989 WL 42583 at *5 (emphasis added); *see also Kennedy v. St. Joseph's Ministries, Inc*., 657 F.3d 189, 195 (4th Cir. 2011) (finding the "controlling question of law"

criterion met since the Court was "faced with a pure question of law"). Questions requiring this Court to apply case-specific facts do not qualify. *See Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674, 677 (7th Cir. 2000) ("The idea was that if a case turned on a pure question of law, something the court of appeals could decide quickly and cleanly without having to study the record, the court should be enabled to do so without having to wait till the end of the case.").

Here, the facts inextricably matter to the Court's ruling on whether tax-exempt status is sufficient to trigger the requirements of Title IX. In reaching its decision, the Court considered and weighed the facts and evidentiary record relating to Defendant CPS's financial standing. (Mem. Order at 12, citing RDB-21-0691, Financial Statements, ECF No. 39 *SEALED*). Where this Court necessarily had to make factual determinations in order to reach a decision on the legal question presented, the issue for appeal is not purely legal in nature; thus, [s]Such 'questions of law' have usually been thought not the kind of 'controlling' question proper for interlocutory review under § 1292(b) [,]" because they "inflict[ ] upon courts of appeals an unaccustomed and illsuited role as factfinders." *Lynn* at 623; see also *In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 626 (7th Cir.2010) ("[A] pure question of law [is] something the court of appeals could decide quickly and cleanly without having to study the record[.]").

Similarly, "[t]he mere fact that its resolution at this time may save pre-trial and trial effort and expense is not determinative; that of course can be said of any interlocutory appeal." *Id.* (citing *Palandjian v. Pahlavi,* 782 F.2d 313, 314 (1st Cir. 1986)). Even a reversal by this Court could merely result in a remand of this case for further proceedings on the remainder of Plaintiffs' claims against Defendant CPS. Questions like this are not "controlling" because "litigation will 'necessarily continue regardless of how [these procedural] questions [are] decided.'" *Butler v. DirectSAT USA, LLC,* 307 F.R.D. at 453; citing *LaFleur v. Dollar Tree Stores, Inc.,* No. 2:12–CI–

00363, 2014 WL 2121721, at *2 (E.D.Va. May 20, 2014) (quoting *North Carolina ex rel. Howes v. W.R. Peele, Sr. Trust*, 889 F.Supp. 849, 853 (E.D.N.C.1995)(Questions are not "controlling" because "litigation will 'necessarily continue regardless of how [these procedural] questions [are] decided.'"). This Court's ruling on Plaintiffs' Title IX claims thus does not contain a section 1292(b) "controlling question of law."

Defendant CPS further argues that "the question of law [as to whether tax-exemption constitutes federal financial assistance under Title IX] is controlling because its resolution on appeal will have a significant impact on implementation of processes and procedures in independent private schools across this jurisdiction." (Mot. at 23.) The facts underlying Defendant CPS's § 501(c)(3) status and its use of this tax-exemption as a proactive tool are unique to this particular school; it may not be the case that each and every independent, private school in the Fourth Circuit is impacted by this Court's decision; either way, Defendant CPS's argument that some schools may have to change their policies and procedures to align with Title IX is not sufficient to justify reconsideration or interlocutory appeal. Indeed, the Court's decision in its Memorandum Order – and the attendant wake-up call that it gave to Maryland and middle states private and independent schools that tax-exemption may constitute a form of federal financial assistance for purposes of Title IX – is not sufficient grounds to certify an appeal.

For the reasons stated herein, Defendant CPS has failed to satisfy even the first prong of the test for interlocutory appeal.

### b.  There is Not a Sufficiently Substantial Ground for Difference of Opinion

Even if Defendant CPS's argument could be construed as a controlling legal question, there is no substantial ground for difference of opinion as to whether this statutory safe harbor applies here. That the question of whether tax-exempt status constitutes federal financial assistance for

purposes of Title IX has been decided by the Supreme Court, despite lower court rulings that parse out exceptions to the rule (See Mem. Order at 12-13). This falls short of the necessary section-1292(b) showing. *See, e.g.*, *Flor v. BOT Fin. Corp. (In re Flor),* 79 F.3d 281, 284 (2d Cir. 1996) (warning that "the mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion"); *White v. Nix,* 43 F.3d 374, 378 (8th Cir. 1994) (noting that a "dearth of cases" doesn't count).

A question is one "to which there is a substantial ground for a difference of opinion" when there is "'substantial doubt' that the district court's order was correct." *Goodman v. Archbishop Curley High Sch., Inc*., 195 F. Supp. 3d 767, 774 (D. Md. 2016) (quoting *Kennedy v. Villa St. Catherine, Inc.,* No. 09-3021, 2010 WL 9009364, at *2 (D. Md. June 16, 2010)). A litigant's own disappointment or disagreement with the outcome of an order does not rise to the level of substantial doubt. *See Lizarbe v. Rondon*, No. 07-1809, 2009 WL 2487083, at *3 (D. Md. Aug. 12, 2009). Rather, as a general matter, "'[a]n issue presents a substantial ground for difference of opinion if courts, as opposed to parties, disagree on a controlling legal issue.'" *Goodman*, 195 F. Supp. 3d at 774 (quoting *Randolph v. ADT Sec. Servs., Inc*., No. 09-1790, 2012 WL 273722, at *6 (D. Md. Jan. 30, 2012)); *see also In re Nichols,* No. 14-0625, 2014 WL 4094340, at *3 (D. Md. Aug. 15, 2014) ("In other words, for interlocutory appeals, it matters not whether the lower court simply got the law wrong, but whether courts themselves disagree as to what the law is." (citation omitted)).

Here, Defendant CPS cites only district court cases from other circuits in support of its arguments that to § 501(c)(3) status does not constitute receipt of federal financial assistance for purposes of imputing Title IX's requirements. Plaintiffs, in their Memorandum of Law in Support of their Opposition to Defendant CPS's Motion to Dismiss and/or Motion for Partial Summary

Judgment (Dkt. 109), along with this Court in its Memorandum Order, present Supreme Court and Eleventh Circuit precedent that deal squarely with this exact issue (Mem. Order at 12-13). Simply put, there is no substantial ground for difference of opinion at play here; the pertinent courts have reached consensus.

Similarly, that this issue is one of first impression within the Fourth Circuit is insufficient to meet the test for interlocutory appeal. It is true that "[c]ases of first impression do not necessarily create 'a substantial ground for difference of opinion.'" *Brooks v. Circuit City Stores,* No. DKC–95–3296, 1997 WL 679899, at *1 (D.Md. Sept.16, 1997) (citing *In re Flor*, 79 F.3d 281, 284 (2d Cir.1996)); *see also David v. Alphin*, No. 07–cv–11–RJC–DLH, 2009 WL 3633889, at *4 (W.D.N.C. Oct.30, 2009) (same); *State of N .C. ex rel. Howes v. W.R. Peele, Sr. Trust*, 889 F.Supp. 849, 852 (E.D.N.C.1995) ("District courts have not been bashful about refusing to find substantial reason to question a ruling of law, even in matters of first impression.'") (quoting 16 CHARLES A. WRIGHT, ET AL., FED. PRAC. & PROC. § 3930, at 157 (1977)); *Carbotrade v. Bureau Veritas,* 1993 WL 60567 (S.D.N.Y. March 2, 1993) at *1 (stating that the fact that the issue is one of first impression "does not, without more, suffice to present a 'substantial ground for difference of opinion'"; noting that "[t]he legislative history of 28 U.S.C. § 1292(b) indicates that the statutory prerequisite of "substantial ground for difference of opinion" is satisfied only when there is " 'substantial doubt' that the district court's order was correct'").

Of import, and as discussed throughout this Memorandum and in the Court's Memorandum Order, the Supreme Court and our sister circuits have ruled on this exact legal issue. (Mem. Order at 12-13.) The facts of this case, together with the precedent set by the Courts in *Regan, Grove City College, Smith,* and *Cannon,* as discussed supra, do not present the sort of unique situation where interlocutory appeal is warranted. Since Defendant CPS has presented no reason to find that

this Court's Order is a more novel or difficult question beyond the Court's purview, the Court should decline to find that it demands interlocutory appeal.

      **c.  Defendant CPS's Argument that an Interlocutory Appeal would Materially Advance this Litigation Fails**

Nor does Defendant CPS credibly show that an interlocutory appeal would materially advance this litigation. *See* § 1292(b). As to this factor, Defendant CPS simply claims that an interlocutory appeal will allow this litigation to conclude more expeditiously.[13] (Mot. at 18.) To the contrary, an interlocutory appeal premised on bare disagreement with the Court's rulings, where there is no pressing, substantial disagreement of the courts, would only needlessly drag out the resolution of this litigation. In determining whether certification would materially advance the ultimate termination of the litigation, courts consider whether an immediate appeal would: "(1) eliminate the need for trial, (2) eliminate complex issues so as to simplify the trial, or (3) eliminate issues to make discovery easier and less costly." *Lynn*, 953 F. Supp. 2d at 626. None of these factors are implicated here. Courts have denied similar requests for interlocutory appeal. *See, e.g., id.* (movant's claim that an interlocutory appeal would simply "speed up the litigation" was insufficient to establish that an immediate appeal would materially advance the litigation). Indeed, the "potential for avoiding court costs in the event of later appellate reversal is true of nearly every district court order, and the 'mere fact' that an interlocutory appeal 'at this time may save pre-trial and trial effort and expense is not determinative; that of course can be said of any interlocutory appeal.'" *Fannin*, 873 F.2d at 1438.

It is simply not the case here that an appellate court's decision in favor of Defendant CPS's position will lead to an absolute terminus of the five consolidated cases currently pending against

Defendant CPS. (Mot. 25-26.) As Defendant CPS concedes, even if the Title IX count were dismissed, this Court could extend supplemental jurisdiction over the cases and allow the litigations to proceed in federal court. *Id*. To wit, H.C.'s Title IX claim survives even if the Court were to overturn its prior Order concerning tax-exemption. *Id.* The remaining counts of Plaintiffs' Amended Complaints remain viable against Defendant CPS and have survived multiple rounds of dispositive motions practice.

Typically, this test is only met when the moving party can show that *all counts, indeed the entire litigation*, would be disposed of by a contrary ruling on the contested legal issue. *See Fannin* at \*5; *See also In re Swann Ltd. Partnership*, 128 B.R. 138, 140–41 (D.Md.1991) (Interlocutory appeal does not promote termination of litigation if decision on issue would result in case being transferred to a venue "where a judge unfamiliar with the litigation would have to start from scratch. Such delay is not in keeping with the requirement that an interlocutory appeal be accepted only if it will help terminate or shorten litigation and keep expenses down."); *N.J. Dep't of Treas. v. Fuld*, 2009 WL 2905432, at \*2 (D.N.J. Sept.8, 2009) (Third element necessary for interlocutory appeal may be satisfied only when movant can show that summary judgment should have been granted on all counts, and litigation will end, without need for a trial and the associated costs and time commitments). Plaintiffs' claims against Defendant CPS do not rise and fall on the Title IX claim, and the litigation will continue even if the Title IX count were to be dismissed. Indeed, there would not be much of a cognizable difference between the case presented to the jury here with or without Title IX. As such, Defendant CPS has not met the requirements of the third element for interlocutory appeal.

## CONCLUSION

Based on the foregoing, Defendant CPS's Motion for Reconsideration and/or Motion to Certify an Order for Interlocutory Appeal should be denied.


Dated: <u>August 22, 2022</u>                    Respectfully,


                                        */s/ Christina Graziano*
                                        Justin Browne (Bar No. 29164)
                                        Christina Graziano *(admitted pro hac vice)*
                                        Brian Ketterer (*admitted pro hac vice*)
                                        Ketterer, Browne & Associates, LLC
                                        336 S. Main Street
                                        Bel Air, Maryland 21014
                                        Phone: (855) 522-5297
                                        Facsimile: (855) 334-5626
                                        Christina@KBAattorneys.com
                                        Justin@KBAattorneys.com
                                        Brian@KBAattorneys.com

                                        *Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 22nd day of August, 2022, a copy of the foregoing

document was served via ECF on all counsel of record:

Gregg E. Viola, Esq.
Mark P. Johnson, Esq.
Eccleston and Wolf
7240 Parkway Drive, 4th Floor
Hanover, MD 21076
410-752-7474
viola@ewmd.com
johnson@ewmd.com
Counsel for Defendant Concordia Preparatory School

Brian S. Goodman, Esq.
Goodman & Donohue LLC
9199 Reisterstown Road
Suite 213 C
Owings Mills, MD 21117
443-824-0659
brian@goodmandonohue.com
Counsel for Defendant Lutheran Church Missouri Synod Southeast District

_/s/ Christina Graziano_____
Christina Graziano, Esq.